[No. 36317.  Department One.  August 22, 1963.]

KENNETH J. FISHER, *Appellant*, v. THE CITY OF SEATTLE, *Defendant*, STANDARD OIL COMPANY OF CALIFORNIA, WESTERN OPERATIONS, INC., *Respondent.**

*Walsh & Margolis*, by *Robert J. Hall*, for appellant.

*Rosling, Williams, Lanza & Kastner*, by *Joseph J. Lanza*, for respondent.

HUNTER, J.—This is an action brought by the appellant (plaintiff), Kenneth J. Fisher, to recover for injuries received due to the alleged negligence of the defendant (respondent), Standard Oil Company of California, Western Operations, Inc., and the city of Seattle.

*Reported in 384 P. (2d) 852.

The sole question on this appeal is whether the plaintiff is barred from recovery under RCW Title 51, the Workmen's Compensation Act. RCW 51.24.010 permits the bringing of an action, provided the workman has been employed in extrahazardous work, "If the injury to a workman is due to negligence or wrong of another not in the same employ . . ."

■ Respecting personal injuries in extrahazardous employment, the Workmen's Compensation Act affords immunity to the employer only; it is not a bar to an action against a negligent third party. *Greenleaf v. Puget Sound Bridge & Dredging Co.,* 58 Wn. (2d) 647, 364 P. (2d) 796 (1961).

The facts are not in dispute. The plaintiff was hired by Standard Stations, Inc. (Standard Stations herein) as a service station attendant for a station located in the city of Seattle. While in the act of opening the station early one morning, he turned on a switch controlling the oil burner and was injured in an explosion and fire which then occurred. The explosion and fire were caused by the igniting of gases which had generated and accumulated on an adjoining garbage and refuse dump and fill maintained by the city of Seattle. The plaintiff alleges his injuries occurred because of the negligence of the city of Seattle and Standard Oil Company of California, Western Operations, Inc. (Western Operations herein) in permitting the gas to enter the building.

Standard Oil Company of California (Standard of California herein), Western Operations, and Standard Stations are three separate corporations. The latter two are wholly owned subsidiaries of the former. In 1953, Standard of California and Standard Stations entered into an agreement whereby the latter, for a monthly fee of $1,250, undertook to employ station personnel, to operate designated stations, to keep such books and records as required by Standard of California, and to receive and turn over money from operations when requested. Standard of California

agreed to furnish all other needed personnel and to provide sufficient funds for station operations and personnel.

In 1956, Standard of California and Western Operations entered into a management agreement whereby the latter undertook, for a monthly fee of $10,000, to manage and operate substantially all of the former's physical properties, businesses, and associated services. Shortly thereafter, these three corporations agreed that all rights and obligations of Standard of California should be performed by Western Operations and that thereafter Standard Stations should look to that corporation in all respects in connection with the 1953 agreement.

The plaintiff set forth in an affidavit that, because he was hired and paid by Standard Stations, he was led to believe that only Standard Stations was his employer. He further stated that he was never informed he was working for Western Operations, that he knew nothing of the agreements between the three corporations, and that he did not know that Western Operations prepared Standard Station's paychecks and paid industrial insurance premiums for Standard Stations' employees.

Subsequent to the serving and filing of the plaintiff's complaint and Western Operations' answer, Western Operations moved for summary judgment. The plaintiff then made a cross motion for summary judgment for the purpose of striking Western Operations' affirmative defense that the plaintiff's action was barred by the Workmen's Compensation Act. The trial court denied the plaintiff's motion and granted Western Operations' motion on the basis that, by reason of the agency relationship existing between the three corporations, the plaintiff was an employee of Western Operations. From the entry of an order pursuant to this determination, the plaintiff appeals. The city of Seattle is not a party to this appeal.

The plaintiff contends that, since he was hired by Standard Stations and since he had no knowledge of its relation to Western Operations, Standard Stations only is his employer. He argues that disclosure of this relationship is

necessary otherwise the essential element of consent to his employment is missing.

Western Operations, on the other hand, contends that, by reason of the agreements between the three corporations, Standard Stations is its agent, and therefore the employment of the plaintiff by its agent, Standard Stations, created an employer-employee relationship between the plaintiff and Standard Stations' principal, Western Operations. In support of its position that Standard Stations was its agent, Western Operations has directed our attention to the complete dominion and control which it retained over the work being done by Standard Stations. It contends it is immaterial whether the plaintiff had knowledge of the relationships involved.

The stress which Western Operations places on its retention of control is directed toward whether Standard Stations is its agent. See Restatement, Agency (2d) § 220 (1958). The fact of this agency is important only insofar as the rule upon which Western Operations relies is applicable to the determination of this case. For the purpose of our determination, we assume that Standard Stations is the agent of Western Operations.

Western Operations relies upon the general rule

" . . . that an agent, who with authority express, implied, apparent or actual, employs help for the benefit of his principal's business, thereby creates the relationship of employer and employee between such help and his principal." 1 Schneider, Workmen's Compensation Text (Perm. ed.) § 233 (1941).

■ This rule is derived from the common-law rules developed primarily for the purpose of respondeat superior or vicarious liability. (For a general history on the development of the rules of vicarious liability at common law see 8 Holdsworth, A History of English Law 472-482 (2d ed. 1937), and Holmes, Agency, 4 Harv. L. Rev. 345 (1891).) In applying these common-law vicarious liability rules to cases involving workmen's compensation issues, however, difficulty is often encountered. That difficulty is: The basic purpose for which the rules of vicarious liability were used

at common law is different from the purpose of the rules used in compensation law.

The rules of vicarious liability at common law were used generally for the adjustment of rights between the master and a third party due to activities carried on by the servant. Insofar as vicarious liability was concerned, it was possible thereunder to strike up a master-servant relationship despite the lack of consent on the part of the servant. See Restatement, Agency (2d) §§ 221, 222; Mechem, Outlines of the Law of Agency (3d ed. 1923) § 502. Thus, it made no difference whether there was a mutual agreement, as to their respective status, between the "master" and "servant." The important question was, instead, whether the "master" accepted and substantially controlled those activities of the "servant" which led to the third party's injury.

Under workmen's compensation law, however, the spotlight focuses on the employee, *i.e.*, the servant, rather than on the employer, *i.e.*, the master. The important question, here, is: Did the workman consent with the "employer" to the status of "employee"? Unlike the common law, compensation law demands that, in order to find an employer-employee relation, a *mutual* agreement must exist between the employer and employee.

Regarding the necessity of such an agreement in cases involving workmen's compensation issues as compared to cases involving issues of vicarious liability, 1 Larson, Workmen's Compensation Law § 47.10 (1952) states:

"   .   .   .

"The reason for the difference between the two concepts is readily explained by the difference between the nature of the two liabilities involved. The end product of a vicarious liability case is not an adjustment of rights between employer and employee on the strength of their mutual arrangement, but a unilateral liability of the master to a stranger. The sole concern of the vicarious liability rule, then, is with the master: did he accept and control the service that led to the stranger's injury? If he did, it is of no particular importance between him and the stranger whether the servant enjoyed any reciprocal or contractual rights *vis-a-vis* the master. Accordingly, the Restatement

of Agency says plainly that the master must consent to the service, but nowhere requires that the servant consent to serve the master or even know who he is.

"Compensation law, however, is a mutual arrangement between the employer and employee under which both give up and gain certain things. Since the rights to be adjusted are reciprocal rights between employer and employee, it is not only logical but mandatory to resort to the agreement between them to discover their relationship. To thrust upon a worker an employee status to which he has never consented would not ordinarily harm him in a vicarious liability suit by a stranger against his employer, but it might well deprive him of valuable rights under the compensation act, notably the right to sue his own employer for common-law damages. . . ."

It is obvious from the above discussion that, under the same set of facts, an employer-employee relation may or may not exist depending upon the purpose for which the determination is desired. Thus, a workman might be deemed an "employee" for the purpose of the vicarious liability of a master to a third party while, under the same facts, he may not be an "employee" for purposes of workmen's compensation issues.

The reasoning in the "lent servant" situation is applicable to the present case. In these situations, it is a well-established rule that an employee cannot have an employer thrust upon him against his will or without his knowledge. *Barney v. Anderson,* 116 Wash. 352, 199 Pac. 452 (1921); 3 Schneider, Workmen's Compensation Text (Perm. ed.) § 782.

*"Servant lent or hired to another.* The general servant of one person may be lent to, and become the servant of, another by submitting himself to the direction and control of the other with respect to a particular transaction or piece of work . . . *However, such a relation between the borrower and the servant is not established unless it appears that the servant has expressly, or by implication, consented to the transfer of his services to the new master,* and unless the lender surrenders and the borrower assumes the power of supervision and control." (Italics ours.) 56 C.J.S., Master and Servant § 2(d) (2).

In discussing the requirement that there be consent by an employee to a change in employment relations, Justice Cardozo, in *Murray v. Union R. Co. of New York City*, 229 N. Y. 110, 127 N. E. 907 (1920), stated:

". . . We do not doubt that the same man may be in the general employment of one master and the special employment of another. [citations omitted] But employment, like any other contract, presupposes understanding. The new relation cannot be thrust upon the servant without knowledge or consent. [citations omitted] He must understand that he is submitting himself to the control of a new master. We are not concerned at the moment with cases in which the rights of third persons are involved. We speak of cases where the parties to the disputed relation are the parties to the controversy. Understanding may be inferred from circumstances, but understanding there must be. Common-law rights and remedies are not lost by stumbling unawares into a new contractual relation. There can be no unwitting transfer from one service to another."

Also, see, 1 Larson, Workmen's Compensation Law § 48.10 (1952); *Stroud v. Zuzich*, 271 S. W. (2d) 549 (Mo., 1954); *Quick v. Allegheny Constr. Equip. Co.*, 361 Pa. 377, 65 A. (2d) 238 (1949); *Crawford v. Duluth, Missabe & Iron Range R. Co.*, 220 Minn. 225, 19 N. W. (2d) 384 (1945).

We hold that, in cases involving the issue whether under Washington's workmen's compensation laws there is an employer-employee relation, such a relation cannot exist without the consent of the workman.

The plaintiff, in the instant case, filed an affidavit stating he had no knowledge of the agreements or relation between Standard Stations and Western Operations; he believed his employer to be Standard Stations only. There is no indication in the record, that he, in any way, consented to an *employee relationship* with Western Operations. Thus, the trial court erred in granting summary judgment to Western Operations and in denying the plaintiff's motion for summary judgment made for the purpose of striking Western Operations' affirmative defense.

Western Operations has relied on the case of *Welden v. Skinner & Eddy Corp.*, 103 Wash. 243, 174 Pac. 452 (1918).

In that case, Skinner & Eddy agreed with an engineering firm for the latter to construct certain buildings for the former. The plaintiff was hired as a carpenter by the engineering firm and was injured when a galvanizing tank, located on Skinner & Eddy's property, exploded. The plaintiff brought a suit against Skinner & Eddy, under the compensation act, on the theory he was the employee of the engineering firm and not Skinner & Eddy. Looking to the contract between the engineering firm and Skinner & Eddy, this court found that Skinner & Eddy retained control over the work being performed. As a result of this control, it was held that the engineering firm was an agent of Skinner & Eddy, and not an independent contractor, and that the plaintiff was therefore Skinner & Eddy's employee by reason of this agency.

The *Skinner & Eddy* case was determined on the basis of the common-law rules relating to vicarious tort liability, as discussed above. In the instant case, the plaintiff has challenged these rules; he contends that, for Workmen's Compensation law purposes, a workman must consent before the relation of employer-employee comes into existence. The issue of consent was not before this court in the *Skinner & Eddy* case, and the court did not therefore consider it. Thus, that case is not controlling on the issue now before us.

In addition, Western Operations cites *Cimorelli v. New York Central R. Co.*, 148 F. (2d) 575 (6th Cir., 1945), to illustrate the principle that one may become an employee of another although his contract is not directly made with such person. This case, like the *Skinner & Eddy* case, does not consider the issue of consent but applies the common-law test relating to the retention of control. Like the *Skinner & Eddy* case, it, too, is not applicable or controlling. Western Operations also cites *St. Claire v. Minnesota Harbor Ser. Inc.*, 211 F. Supp. 521 (D. C. Minn., 1962). This case, however, does not support their position by reason of the fact that it recognizes the rule, which we have used as a basis for our determination in the instant case, that

one may not be thrust into an employee status without his consent.

The order granting summary judgment for Western Operations is therefore reversed, and the cause is remanded to the trial court with instructions to grant the plaintiff's motion for summary judgment and to proceed with a trial on the merits.

OTT, C. J., HILL, ROSELLINI, and HALE, JJ., concur.