22 P.3d 810 (2001)
106 Wash.App. 26
Mary Esther JUDY, Appellant,
v.
HANFORD ENVIRONMENTAL HEALTH FOUNDATION, Larry B. Smick, D.O., and Bechtel Hanford Incorporated, Respondents.
No. 19047-1-III.
Court of Appeals of Washington, Division 3, Panel One.
April 24, 2001.
*812 David E. Williams, Crithlow, Williams & Schuster, Richland, for Appellant.
Jerome R. Aiken, Meyer, Fluegge & Tenney, Yakima, Larry E. Halvorson, Halvorson & Saunders, Seattle, Frederick T. Rasmussen, Lisa M. Herb, Stokes, Lawrence, Seattle, for Respondents.
*811 SWEENEY, J.
Mary E. Judy sued her employer and an occupational health organization for injuries sustained on the job. The questions presented are whether the failure to inform her of her physical limitations following a negative physical capacities evaluation amounted to a deliberate injury on the part of her employer or a breach of the duty of care by the physician responsible for her occupational evaluation. We conclude that the employer's conduct, while arguably negligent, did not meet the certainty threshold required by Birklid v. Boeing Co.[1] We also conclude that the Hanford Environmental Health Foundation was not Ms. Judy's employer and was therefore not entitled to the immunity afforded by the Industrial Insurance Act. Nor did it breach any duty of care to Ms. Judy. *813 We therefore affirm the trial court's summary dismissal of the action.

FACTS
The Hanford Reservation is owned by the United States and managed by the Department of Energy (DOE). DOE operates through various contractors. One of these is Bechtel Hanford, Inc. Bechtel employed Ms. Judy as a manual laborer in its Decontamination and Decommissioning (D & D) classification.
Hanford Environmental Health Foundation (HEHF), also under contract with DOE, provides occupational medical services at Hanford. Its responsibilities include medically evaluating workers to determine whether they can meet the physical qualifications of their jobs. Larry B. Smick, D.O., is a staff physician employed full time by HEHF to provide occupational health care to Hanford employees. Carl Loera, P.T., is an off-site physical therapist.
In May 1997, Bechtel referred Ms. Judy to HEHF for evaluation of her physical capacity to work as a D & D laborer. In June 1997, Dr. Smick referred Ms. Judy to Mr. Loera. Neither Dr. Smick nor any other HEHF employee actually saw Ms. Judy. On July 14, 1997, based on Mr. Loera's functional capacity evaluation, Dr. Smick reported to Bechtel that the demands of her job exceeded Ms. Judy's grip strength and lifting capacity. He concluded that "the worker is not physically capable of performing the physical essential functions of the job." Clerk's Papers at 286.
No one told Ms. Judy of the results. Nor did Bechtel act on Dr. Smick's report. And Ms. Judy continued to work as a laborer, without accommodation. On March 8, 1998, Ms. Judy was injured on the job. She applied for and received worker's compensation benefits.
In July 1998, Bechtel laid Ms. Judy off. Its termination letter cited the July 1997 HEHF evaluation that she was physically unable to perform the essentials of the job with or without accommodation. This was Ms. Judy's first notification of her functional limitations.
Ms. Judy sued HEHF and Dr. Smick for negligence, alleging breach of the duty to inform her of her special vulnerability to injury. She later amended her complaint to include Bechtel as a defendant. She alleged Bechtel forfeited the employer immunity afforded by the Industrial Insurance Act (IIA) because it willfully disregarded actual knowledge that her injury was certain to occur.
HEHF and Dr. Smick moved for summary judgment (CR 56(b)), claiming the action was barred by the immunity provided by the IIA. Bechtel filed a CR 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted. The court granted both motions.

DISCUSSION

BECHTEL HANFORD
Industrial Insurance Immunity Intentional Acts. The IIA immunizes employers from civil tort actions for workplace injuries. Seattle-First Nat'l Bank v. Shoreline Concrete Co., 91 Wash.2d 230, 242, 588 P.2d 1308 (1978). The Act provides the exclusive remedy for injured workers. RCW 51.04.010; Shoreline Concrete, 91 Wash.2d at 241, 588 P.2d 1308. Employers are immune from civil lawsuits for nonintentional workplace injuries. Flanigan v. Dep't of Labor & Indus., 123 Wash.2d 418, 422, 869 P.2d 14 (1994).
But RCW 51.24.020 creates an exception to the exclusive remedy rule. An employer is not exempt if it has actual knowledge that injury is certain to occur and willfully disregards that knowledge. Birklid v. Boeing Co., 127 Wash.2d 853, 865, 904 P.2d 278 (1995).
Ms. Judy contends Bechtel willfully disregarded actual knowledge that she was physically incapable of doing her job; and this, she believes, is knowledge that injury was certain to occur. Bechtel thereby forfeited the protections of the IIA. Id. Bechtel responds that the Birklid exception to employer immunity requires more than mere negligence, or even gross negligence. In fact, even acting with substantial certainty that injury will result is not enough. Folsom *814 v. Burger King, 135 Wash.2d 658, 666-67, 958 P.2d 301 (1998).
To pierce the statutory shield protecting employers from civil suits, the worker must prove two elements. First, that the employer had certain knowledge injury would occur. Stenger v. Stanwood Sch. Dist., 95 Wash.App. 802, 812, 977 P.2d 660 (1999). Second, that the employer willfully disregarded that knowledge. Id. at 813, 977 P.2d 660. Unless a reasonable jury could conclude that both prongs are met, summary judgment was required. Id. Nothing here even approaches this threshold.
The deliberate conduct test of Birklid is narrowly applied. It does not include negligence. In some jurisdictions, conduct with "substantial certainty" of causing injury is sufficient to meet the test. But this is not so in Washington. Birklid expressly rejects the "substantial certainty" test. Birklid, 127 Wash.2d at 865, 904 P.2d 278. In Birklid, workers became ill from exposure to chemical fumes. Boeing management saw them becoming ill, knew they would become ill, but continued to use the chemical. The court held that this was "willful disregard." Id. at 863, 904 P.2d 278.
Ms. Judy relies on Birklid and Stenger to support her position here that Bechtel willfully disregarded her risk of injury. Both cases are easily distinguished. In Birklid, Boeing knew, from substantial experience, that employees exposed to phenol-formaldehyde would get sick. Supervisors had predicted problems based on previous use of the compounds. Birklid, 127 Wash.2d at 857, 904 P.2d 278. Boeing knew that the safe exposure level set by the manufacturer was not safe because employees got sick at that exposure level. Id. So when employees did get sick, the court concluded it was no accident. Id. at 863, 904 P.2d 278. The consequences may not have been desired. But Boeing knew that the consequences were inevitable.
That same level of certainty was also present in Stenger. Stenger, 95 Wash.App. at 816-17, 977 P.2d 660. There, a young, multi-handicapped, special education student had caused between 1,316 and 1,347 injuries to school district staff. He had inflicted injuries on almost a daily basis. Supervisors knew that their staff would continue to suffer injuries if they worked with this student. Id. at 812-13, 977 P.2d 660. Given this level of certainty, the court accepted the worker's argument that "the [d]istrict accepted some level of injury to the staff" as a consequence of working with this student. Id. at 815, 977 P.2d 660. Or at least a jury could reasonably conclude that the district had willfully disregarded its knowledge that injuries would continue. Id. at 816-17, 977 P.2d 660. The court then reversed a summary dismissal.
This level of certainty is not present here. It can hardly be said that Ms. Judy's employer knew she would be injured, or that injury was such a certainty it should have known. Ms. Judy was presently performing the job. She injured her back while operating a pallet jack and a large box fell on the tracks. Dr. Smick's report to Bechtel did not predict with certainty actual future injuries. It simply discussed her limitations. This does not then impart actual knowledge that injuries will occur.
Here, it is arguably foreseeable, or maybe even substantially certain, that Ms. Judy would eventually be injured. These facts do not, however, rise to the level of actual knowledge of certain injury required by Birklid.
CR 12(b)(6) Rather Than CR 56 Dismissal. Ms. Judy contends the court erred by granting judgment on the pleadings. She stated a cause of action under the willful disregard exception to the immunity provisions of the IIA and therefore stated a valid claim. Ms. Judy complains that the trial judge denied her the opportunity to present evidence beyond the pleadings which might have supported her cause of action.
Bechtel responds that the court considered additional evidence and therefore essentially "converted" the motion to one for summary judgment.
Summary dismissal must be denied if a right of recovery can be established under any provable set of facts. Smith v. Acme Paving Co., 16 Wash.App. 389, 393, 558 P.2d 811 (1976) (citing Fleming v. Smith, 64 *815 Wash.2d 181, 185, 390 P.2d 990 (1964)). There is, however, no need to convert a motion to dismiss on the pleadings into one for summary judgment when the operative facts are undisputed, the core issue is one of law, and whatever else might be presented would not change the disposition of the motion. Ortblad v. State, 85 Wash.2d 109, 111, 530 P.2d 635 (1975).
Here, by alleging willful disregard, Ms. Judy's complaint did state a claim upon which relief could be granted. Judgment on the pleadings, either under CR 12(b)(6) or CR 12(c)[2] was therefore technically incorrect. Bechtel's motion should have been for summary judgment under CR 56. The facts are, however, undisputed and would remain undisputed on remand. The only issue is one of lawwhether the facts alleged constitute sufficient certainty of injury as to permit the action against Bechtel to proceed. Remand would serve no purpose. Both this court and the trial court considered this issue.
Even were we to assume the presence of two earlier industrial injuries, the result would not change. No one was more familiar with Ms. Judy's limitations than Ms. Judy herself. She did not have to be told of physical limitations to experience them. Here, Ms. Judy asked for no special accommodations. No professional judgment was required here. The procedural error was then harmless. Ortblad, 85 Wash.2d at 111, 530 P.2d 635.

HEHF AND DR. SMICK LIABILITY
HEHF Is Not Ms. Judy's Employer. HEHF claims IIA employer immunity by its participation in a comprehensive Special Insuring Agreement. Under the agreement, DOE contractors contribute 2.5 percent of payroll to DOE, which deposits the funds with the Department of Labor and Industries (L & I) to pay employee claims. HEHF contends all Hanford contractors, including, of course, HEHF, are therefore one statutory employer for the purposes of the IIA.
Standard of Review. Again our review is de novo. DuVon v. Rockwell Int'l, 116 Wash.2d 749, 753, 807 P.2d 876 (1991). The issue of IIA immunity is decided as a matter of law when the facts are undisputed. Id.; Folsom, 135 Wash.2d at 671, 958 P.2d 301.
An employee cannot sue his or her employer for a workplace injury. RCW 51.04.010. But, absent that employment relationship, claims are not barred by the IIA. Deeter v. Safeway Stores, Inc., 50 Wash.App. 67, 80, 747 P.2d 1103 (1987) (Grosse, J., concurring) (citing 2 ARTHUR LARSON, WORKMEN'S COMPENSATION § 65.10 (1986)).
Common Fund. HEHF first claims employee status based on its payments into a common Hanford contractors L & I fund. Under Washington's IIA, payment of premiums into a common fund does not create immunity absent an employment relationship. Hildahl v. Bringolf, 101 Wash. App. 634, 648, 5 P.3d 38 (2000), review denied, 142 Wash.2d 1020, 16 P.3d 1263 (2001). An employer-employee relationship cannot be created without the worker's knowledge and consent for the purposes of Washington workers' compensation law. Fisher v. City of Seattle, 62 Wash.2d 800, 806, 384 P.2d 852 (1963). The hallmark of such a relationship is the employer's right to control the employee's conduct. Hildahl, 101 Wash.App. at 642, 5 P.3d 38 (citing Novenson v. Spokane Culvert & Fabricating Co., 91 Wash.2d 550, 553, 588 P.2d 1174 (1979)).
Ms. Judy did not consent to employment by HEHF. And HEHF did not exercise control over her. Under the terms of the Special Insuring Agreement, the Hanford contractors paid contributions to the DOE, which handed them over to L & I. The funds were put into a bank account in L & I's name. L & I took title to the moneys, evaluated the claims, and paid the benefits. HEHF may have contributed to a common *816 pool to pay the premiums. But Bechtel was Ms. Judy's only employer.
The authorities cited by HEHF to the contrary all address the immunity afforded a subsidiary or division. HEHF is neither. For example, in Manor v. Nestle Food Co.,[3] the parent company was entitled to immunity because it had fulfilled its L & I obligation by paying the subsidiary's worker $455,000 out of its insurance fund. HEHF had no such obligation to Bechtel's workers.
Agency. HEHF next argues that it serves as the agent of Bechtel and as such is entitled to immunity. Under the common law, an employer who engages another firm in an agency relationship, retaining control over the firm's work, is the employer of the second firm's injured worker. Fisher, 62 Wash.2d at 807, 384 P.2d 852.
Bechtel had no control over the work of HEHF physicians. And the fact that Bechtel hired HEHF to perform the evaluation here does not affect HEHF's third party status.
In Deeter and Wolf v. Scott Wetzel Servs., Inc.,[4] an L & I claimant sued the independent firm that administered the self-insuring employer's L & I program. The court held that the administrator shared the employer's immunity. These holdings do not help HEHF, which had no such relationship with Bechtel.
HEHF was not Ms. Judy's employer nor the agent of her employer, nor the administrator of her employer's pension plan. And it is not, therefore, immune from a third party action.
Duty to Inform of "Abnormal Condition." Ms. Judy next contends that Dr. Smick and HEHF breached their duty under RCW 7.70.030(1)[5] to inform her of adverse test results. HEHF responds that no court has found liability in an employment examination context absent some contact between the doctor and the patient.
Standard of Review. Whether one owes a duty of care to another is a question of law. DuVon, 116 Wash.2d at 753, 807 P.2d 876; Folsom, 135 Wash.2d at 671, 958 P.2d 301. Issues of material fact remain if it is not possible to make the determination as a matter of law on the record. Evans v. Thompson, 124 Wash.2d 435, 439, 444-45, 879 P.2d 938 (1994).
It is often difficult to define the scope of the duty owed by health care providers to recipients and to distinguish duty from proximate cause. But failure to make this distinction leads to both flawed analysis and disposition. Hunt v. King County, 4 Wash.App. 14, 21, 481 P.2d 593 (1971).
Statutory Liability. Under the common law, medical malpractice liability arose only in the context of a physician-patient relationship. The doctor who identified the physical deficiency (tuberculosis) could not be held negligent because the doctor was not the worker's physician. He was an agent of the company. Riste v. Gen. Elec. Co., 47 Wash.2d 680, 289 P.2d 338 (1955).
In Washington, the medical malpractice act, chapter 7.70 RCW, extends malpractice liability beyond traditional physician-patient relationships. RCW 7.70.030; Eelbode v. Chec Med. Ctrs., Inc., 97 Wash.App. 462, 467, 984 P.2d 436 (1999). For example, by its terms the malpractice act applies to physical therapists and other non-physician health care providers who do not establish doctor-patient relationships with the people they serve. RCW 7.70.020; Eelbode, 97 Wash. App. at 469, 984 P.2d 436. Any person acting as an agent of a physician (RCW 7.70.020(2)), and any entity employing a physician or physical therapist (RCW 7.70.020(3)), are also subject to the malpractice statute. The duty to follow the accepted standard of care applies with full force to *817 these health care workers. RCW 7.70.030(1); Eelbode, 97 Wash.App. at 467, 984 P.2d 436.
To establish malpractice, however, the plaintiff must prove that a health care provider "failed to exercise that degree of care, skill, and learning expected of a reasonably prudent health care provider at that time in the profession" acting in the same or similar circumstances; and that such failure was a proximate cause of the injury complained of. RCW 7.70.040.
Daly v. United States[6] interpreted RCW 7.70.030(1). There, a preemployment screening X ray revealed a shadow on Mr. Daly's lung, but the tuberculosis test was negative. This combination should have triggered a diagnosis of sarcoidosis, a potentially fatal disease that is treatable in its early stages. Daly v. United States, 946 F.2d 1467, 1468 (9th Cir.1991). Mr. Daly's sarcoidosis was not diagnosed for several years because he was not informed of the results. The progress of the disease was arrested, but only after significant impairment. Daly holds that RCW 7.70.030(1) applies to health care providers who perform preemployment screenings outside a doctor-patient relationship.
After Daly, Division II decided Eelbode. There, a physical therapist negligently administered a preemployment test, directly injuring the plaintiff's back. Citing Daly, Eelbode concluded RCW 7.70.030 created potential liability, notwithstanding the lack of a doctor-patient relationship. Eelbode, 97 Wash.App. at 468, 984 P.2d 436. The extent of the physician's duty to the worker in employment examinations, however, has not been fixed.
The accepted standard of care imposes upon employment-screening medical examiners a duty to correctly diagnose manifestly abnormal conditions, or at least to inform the worker of abnormal test results. Daly, 946 F.2d at 1470-71. But this duty is not coextensive with that of the person's own doctor, where the purpose of the examination is therapeutic. Id. at 1470. In the context of employment examinations, "the physician's duty should be less extensive." Id.; Beadling v. Sirotta, 41 N.J. 555, 561, 197 A.2d 857 (1964) (scope of duty owed is not coextensive with duty owed to private patient seeking report as to status of health).
The factual scenario here is two steps removed from both Daly and Eelbode. Dr. Smick did not conduct the examination or have any contact with Ms. Judy. Neither did the examination injure Ms. Judy directly or fail to reveal any existing abnormal condition requiring treatment.
Bechtel referred Ms. Judy to HEHF to compare her physical capacity with the requirements of her job and to report those results to her employer. Dr. Smick competently did this. There can be no malpractice when there is not only no doctor-patient relationship, but no contact, no intent to diagnose, treat or otherwise benefit the patient, no injury directly caused by the examination, no failure to diagnose or notify the patient of an illness disclosed by the examination, and no dispute as to the accuracy of the reported results.
No jurisdiction goes this far. And Daly does not require this result in Washington. It is consistent with chapter 7.70 RCW and other Washington law to hold that doctors have a duty to perform employment screenings competently, not to inflict injury, and to inform the worker of any unknown morbid condition disclosed. But the duty of complete and accurate reporting of the findings runs only to the person ordering the tests. See, e.g., Hafner v. Beck, 185 Ariz. 389, 916 P.2d 1105, 1107 (1995).
Common Law Negligence. Ms. Judy makes an alternative case for common law negligence, based on the duty of reasonable care imposed on one who "gratuitously undertakes to render services which he should recognize as necessary to another's bodily safety, and leads the other in reasonable reliance on the services to refrain from taking other protective steps, or to enter on a dangerous course of conduct...." Hoover v. Williamson, 236 Md. 250, 254, 203 A.2d 861, 10 A.L.R.3d 1064 (1964); RESTATEMENT (SECOND) OF TORTS § 323 (1965).
*818 According to this view, Bechtel may well have no obligation to determine her physical condition. But having gratuitously undertaken to do so, the employer created an expectation that she would be told of any dangerous condition disclosed by that examination. Because she was denied this information, Ms. Judy contends that she refrained from taking protective steps and continued to perform heavy physical labor.
Several courts have held the employer liable on this theory. But none has extended liability to the doctor. E.g., Wojcik v. Aluminum Co. of Am., 18 Misc.2d 740, 744, 183 N.Y.S.2d 351 (1959) (employer liable for negligent omission to advise worker of tubercular condition discovered during a pre-employment physical examination); Dornak v. Lafayette Gen. Hosp., 399 So.2d 168 (La. 1981) (ditto).
If the doctor does no more than direct or supervise an employment examination, he is not liable. Hoover, 236 Md. at 255, 203 A.2d 861. In Hoover, the doctor was liable because he referred the employee to a consultant, advised the employee about the state of the employee's health, and misrepresented the employee's physical condition. Id.
Ms. Judy cites to no authority for the proposition that a physician overseeing or performing a physical capacities evaluation has a duty to inform the worker of a negative result based on otherwise normal findings.
We affirm the trial court's summary dismissals.
WE CONCUR: BROWN, A.C.J., KATO, J.
NOTES
[1] 127 Wash.2d 853, 904 P.2d 278 (1995).
[2] "Motion for Judgment on the Pleadings. After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings. If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by rule 56."
[3] 131 Wash.2d 439, 452, 932 P.2d 628, 945 P.2d 1119 (1997).
[4] 113 Wash.2d 665, 782 P.2d 203 (1989).
[5] "No award shall be made in any action or arbitration for damages for injury occurring as the result of health care which is provided after June 25, 1976, unless the plaintiff establishes one or more of the following propositions:

"(1) That injury resulted from the failure of a health care provider to follow the accepted standard of care[.]"
[6] 946 F.2d 1467 (9th Cir.1991).