Argued and submitted December 11, 2003, affirmed September 1, 2004

William HUNSPERGER,
*Appellant,*

*and*
Mary Hunsperger,
*Plaintiff,*

*v.*

USF REDDAWAY, INC.,
an Oregon corporation
and a subsidiary of USFreightways, Inc.,
*Respondent,*
*and*

PORTLAND GENERAL ELECTRIC,
a subsidiary of Enron Corporation,
a Texas corporation;
Usfreightways Corporation,
a Delaware corporation;
USF Distribution Services, Inc.,
an Illinois corporation
and a subsidiary of USFreightways Corporation;
Enron Corporation,
a Texas corporation;
Ottawa Truck Inc.; Ottawa Truck International, Inc.;
Ottawa Truck Company; Ottawa Truck Corp.;
Ottawa Truck Corporation, Inc.;
Ottawa Trucking Corporation; Ottawa Trucks,
a division of Kalmar Industries, Corp.,
a wholly-owned subsidiary of Kalmar Industries AB;
SISU American, Inc.;
SISU North America, Ins.; SISU, N.A.;
SISU USA, Inc.; SISU Terminal Systems, Inc.;
Kalmar Industries USA Inc.,
a Texas corporation;
Kalmar Industries, Corp.;
Kalmar Industries, Inc./Ottawa Truck Division;
Kalmar, Inc.; Kalmar Industries, Inc./Magnum Division;
Kalmar AC., Inc.;
Kalmar-AC Handling Systems, Inc.;

Kalmar-AC Group, Inc.; Cargotec, Inc.;
Partek Corporation,
a Finnish corporation,
*Defendants.*

0009-09550; A117610

96 P3d 1277

Ben Shafton argued the cause for appellant. With him on the briefs was Morse & Bratt.

Peter C. Richter argued the cause for respondent. With him on the brief were William H. Walters and Miller Nash LLP.

Before Edmonds, Presiding Judge, and Schuman and Ortega, Judges.

ORTEGA, J.

**ORTEGA, J.**

Plaintiff William Hunsperger appeals from the trial court's grant of summary judgment in favor of defendant USF Reddaway (defendant) on his personal injury claim.[1] Plaintiff William Hunsperger and his wife sued defendant, plaintiff's employer, for injuries that he suffered while at work. Plaintiff argues that genuine issues of material fact exist sufficient to create an issue for the jury regarding whether defendant deliberately intended the injuries. Under Washington law, which applies here, plaintiff must show defendant's deliberate intent in order to avoid the exclusive remedy provided by Washington's Industrial Insurance Act. Because plaintiff did not present sufficient evidence of intent to support a jury finding in his favor, we affirm.

On review of the trial court's grant of summary judgment to defendant, we state the facts in the light most favorable to plaintiff, the nonmoving party. *Webber v. Olsen*, 330 Or 189, 192, 998 P2d 666 (2000). Plaintiff, a Washington resident, worked for defendant as a truck driver from 1993 until 1998, the year he suffered his injuries. The injuries occurred at a yard in Oregon that was owned and operated by defendant. On a rainy September night, plaintiff stopped at the yard while heading south. Typically, defendant's trucks that were heading south from Washington would pick up a third trailer for their trucks at the Oregon yard. Employees operating tractor-type vehicles called "yard goats" worked to add or remove trailers from trucks at the yard. Lighting in the area was poor—street lamps stood on the perimeter of the yard but did not shine on the area at issue. The area was dark enough that at least one driver routinely carried a flashlight when he walked there at night. On the occasion at issue, a light on a nearby shop building was obscured by trucks parked in front of it (as was often the case).

In order to add or remove a trailer, truck drivers were required to leave their trucks and hail a yard goat

---

[1] William Hunsperger and his wife, Mary, were plaintiffs below; Mary Hunsperger is not a party to this appeal. Throughout this opinion, the term "plaintiff" refers to William Hunsperger. The resolution of plaintiff's claims against other defendants is not at issue in this appeal.

driver. The area was busy and congested; yard goats would often drive around from behind trucks and move in and out of tight spaces between trucks and trailers. The area was also noisy from the sound of many truck and yard goat engines. Truck drivers were paid for only 45 minutes of the time spent adding or removing trailers in the yard. According to plaintiff, yard goat drivers were also pushed to hurry in adding or removing trailers. Defendant's yard goat drivers were not required to have commercial driver's licenses. Compared to such drivers at yards where commercial licenses were required, defendant's yard goat drivers were relatively younger, less well-trained, and involved in more accidents at the yards.

The conditions at the yard caused one driver to call it a "dead man's zone." Truck drivers had notified defendant that it was unsafe for truck drivers to walk in the yard at night and asked defendant to provide reflective vests so that they would be more visible. Defendant did provide such vests to security personnel working in the yard but not to truck drivers.

At 3:00 a.m., plaintiff left his truck and was walking in the yard, possibly to hail a yard goat driver. It was drizzling at the time, just after a hard rain. While walking in the yard, plaintiff was struck by a yard goat driven by Dean Johnson, who, at the time, was not commercially licensed. Just before the accident, a witness saw Johnson drop off a trailer, drive to the end of a lane of parked trucks, and then turn left and accelerate quickly. The witness estimated that the yard goat was traveling at 10 to 12 miles an hour when it left his view; seconds later the witness heard the yard goat skid on wet pavement. The witness found plaintiff, who had sustained serious injuries, on the ground in front of the yard goat.

At least one of defendant's employees had been injured previously due to the negligence of a yard goat driver, but not under circumstances similar to those at issue here. In that case, which occurred in the daytime at a different yard (in Medford), a trailer was parked at a loading dock. A forklift driver was driving onto the trailer at the same time that a yard goat driver pulled the trailer away from the dock. The

forklift fell to the ground and its load fell on top of the driver, causing serious injuries and eventually death.

Plaintiff and his wife sued defendant for intentional injury, alleging that defendant knew that truck drivers walking in the yard at night were "certain" to be injured or killed by yard goats due to inadequate lighting, layout, and "yard practices." Defendant moved for summary judgment, arguing that, under the applicable Washington law, plaintiffs were limited to the remedies provided under the Industrial Insurance Act (IIA), Washington's workers' compensation scheme, for any injuries that occurred on the job. Defendant further argued that the only exception to that exclusive remedy applied when an employer had "actual knowledge that an injury was certain to occur and willfully disregarded that knowledge"; defendant asserted that plaintiff could not meet that standard. The trial court agreed with defendant and granted the motion.

■■ Plaintiff now appeals, and both parties renew the arguments made below. Both agree that Washington law applies, and both agree that the appropriate inquiry is whether defendant had "actual knowledge that an injury was certain to occur and willfully disregarded that knowledge." *See Birklid v. Boeing Co.*, 127 Wash 2d 853, 865, 904 P2d 278, 285 (1995). We affirm a grant of summary judgment only if "no objectively reasonable juror" could return a verdict for the nonmoving party, here plaintiff. *See Robinson v. Lamb's Wilsonville Thriftway*, 332 Or 453, 455, 31 P3d 421 (2001) (quoting ORCP 47 C).

The IIA provides an exclusive remedy for employees injured in the course of employment, thus barring lawsuits by employees against employers. RCW 51.04.010. However, the IIA contains an exception: employees may bring actions against employers "[i]f injury results to a worker from the deliberate intention of his or her employer to produce such injury." RCW 51.24.020. Although Washington courts initially interpreted the exception narrowly, finding "deliberate intention" only when the employer (or its agent) had a specific intent to cause injury to a particular employee, *Birklid*, 127 Wash 2d at 861-62, 904 P2d at 283-84, the Washington

Supreme Court significantly broadened that interpretation in *Birklid*.

In that case, employees of Boeing were asked to work with a new material in preproduction testing. *Id.* at 856, 904 P2d at 281. Several employees became ill and reported this to Boeing. *Id.* Boeing included the new material in full production without improving ventilation in the work area, and workers again became ill. *Id.* The workers sued Boeing in federal court alleging that Boeing had a "deliberate intention to produce injury" so that the exception to IIA exclusivity applied. On certification of the question from the federal court, the Washington Supreme Court agreed that the workers had sufficient evidence to present the question to a jury. *Id.* at 865, 904 P2d at 285. In reaching that conclusion, the court announced a broader interpretation of the phrase "deliberate intention": "We hold the phrase 'deliberate intention' in RCW 51.24.020 means the employer had actual knowledge that an injury was certain to occur and willfully disregarded that knowledge." *Id.*

We address the first element, whether defendant could have had "actual knowledge that an injury was certain to occur," before we address whether defendant disregarded that knowledge.

From the facts and holding of *Birklid* and subsequent cases, we glean some additional guidance as to what is required to show "actual knowledge that an injury was certain to occur." The facts of *Birklid* show that the employer's intent need not be directed toward a particular employee; rather, it is enough that the intent is directed toward a class of employees. *Birklid* also suggests that the employer need not intend that *injury* occur; rather, the employer must only intend that circumstances certain to cause injury exist. *See Hope v. Larry's Markets*, 108 Wash App 185, 194, 29 P3d 1268, 1273 (2001) (agreeing with that interpretation of the *Birklid* rule). The employer's "actual knowledge that an injury was certain to occur" can be inferred from the fact that the employer was given certain information. Finally, we note that "certainty" that injury will occur is essential; a "substantial certainty" standard was expressly rejected by the *Birklid* court. *Birklid*, 127 Wash 2d at 865, 904 P2d at 285.

Defendant would have us add an additional requirement: that the employer's "actual knowledge" can arise only from the existence of prior similar incidents. Defendant points out that the only post-*Birklid* Washington cases allowing the plaintiffs to defeat summary judgment involved employers who were aware of prior similar incidents. Because defendant here was not aware of any prior incidents where yard goat drivers struck pedestrians at night in the yard, defendant reasons, defendant cannot be charged with the knowledge required under the *Birklid* standard.

Although we ultimately agree with defendant that plaintiff has failed to present a jury issue under the *Birklid* standard, we disagree that *Birklid* requires the existence of prior similar incidents. It is true that the three post-*Birklid* cases allowing the plaintiffs to defeat summary judgment all involved an employer with notice of prior similar incidents. *See Vallandigham v. Clover Park School Dist.*, 119 Wash App 95, 79 P3d 18 (2003), *rev allowed*, 151 Wash 2d 1031, 95 P3d 759 (2004) (a jury could find that the school district knew that injury was certain where a disabled student had injured teachers at least 150 to 160 times over a five-year period; however, the plaintiffs' evidence failed to show that the defendants willfully disregarded that knowledge); *Hope*, 108 Wash App at 194-95, 29 P3d at 1273-74 (a jury could find that the employer knew that the industrial cleaners that the employee was required to use were certain to cause injury where the employee had notified the employer of numerous prior injuries caused by those cleaners); *Stenger v. Stanwood School Dist.*, 95 Wash App 802, 977 P2d 660 (1999) (a jury could find that the school district knew that an injury was certain where a disabled student had caused between 1,316 and 1,347 injuries to teachers). From the prior incidents in those cases, the courts found that a jury could reasonably infer that the defendants had "actual knowledge that an injury was certain to occur." But none of those cases suggest that prior incidents are the only possible source of such an inference.

Defendant also points to language in *Birklid* that hints at a "prior incident" requirement. The *Birklid* court, in distinguishing past cases, explained:

"In all the other Washington cases, while the employer may have been aware that it was exposing workers to unsafe conditions, its workers were not being injured until the accident leading to litigation occurred. There was no accident here. The present case is the first case to reach this court in which the acts alleged go beyond gross negligence of the employer, and involve willful disregard of actual knowledge by the employer of continuing injuries to employees."

*Birklid*, 127 Wash 2d at 863, 904 P2d at 284. Our view is that the quoted language relates to the particular circumstances at issue in *Birklid* but is not part of *Birklid*'s clearly stated holding, which incorporates no "prior similar incident" requirement.

It may well be that in the vast majority of cases employers will not have knowledge to the requisite level of certainty unless the practice has caused prior similar incidents. However, one can easily imagine situations where prior incidents are unnecessary to actual knowledge. If an employer required an employee to jump from a five-story building, it could hardly be maintained that the employer did not have "actual knowledge that an injury was certain to occur" simply because the employer had not made a previous similar order that resulted in injury.

Although plaintiff's claim does not fail for lack of a prior similar incident, we conclude that plaintiff nevertheless has not presented a legally sufficient basis for a jury conclusion that defendant had actual knowledge that injury was certain to occur. Several post-*Birklid* cases are useful on this point. In *Goad v. Hambridge*, 85 Wash App 98, 100, 931 P2d 200, 201, *rev den*, 132 Wash 2d 1010, 940 P2d 654 (1997), an employee was injured when he reached in to remove a piece of wood from a planer at his employer's sawmill. The planer manufacturer had repeatedly advised the employer that employees should be periodically warned of the dangers posed by the planer and offered guards and signage to make its use safer. *Id.* The employer did not follow that advice or add guards or signs. *Id.* However, all operators, including the plaintiff, were told not to reach into the planer while it was running. *Id.* at 101, 931 P2d at 202. The Washington Court of Appeals concluded:

"In this case, * * * the [plaintiffs] have presented no evidence that [the defendant] knew [the employee's] injury was certain to occur. At best, [the defendant] knew of the *potential* of an injury similar to [the employee's], which is not enough to satisfy the *Birklid* standard."

*Id.* at 104, 931 P2d at 203 (emphasis in original).

In *Folsom v. Burger King*, 135 Wash 2d 658, 958 P2d 301 (1998), the court found a similar lack of certainty. In that case, a former employee—whom the employer had hired knowing of his violent felony record—murdered two other employees during a robbery of the employer's restaurant. 135 Wash 2d at 665-66, 958 P2d at 306. All employees knew that the employer kept large amounts of cash in the restaurant. *Id.* at 666, 958 P2d at 306. The restaurant's back entrance did not have a security peephole and did not lock properly, and the employer had discontinued its security monitoring system. *Id.* at 667, 958 P2d at 306. The employees were murdered when the former employee entered through the back door in order to rob the restaurant. *Id.* at 661, 958 P2d at 304. The court concluded that the plaintiffs could not demonstrate "that by operating the business in the way [the defendant] did, [the defendant] *knew* its employees would be killed." *Id.* at 667, 958 P2d at 307 (emphasis added).

Finally, in *Judy v. Hanford Environmental Health Foundation*, 106 Wash App 26, 22 P3d 810, *rev den*, 144 Wash 2d 1020, 32 P3d 284 (2001), the plaintiff worked at the Hanford Reservation as a manual laborer. 106 Wash App at 30, 22 P3d at 813. The plaintiff was referred to Hanford's health facility to evaluate her physical ability. *Id.* The examination revealed that plaintiff was "not physically capable of performing the physical essential functions of the job." *Id.* However, the plaintiff was never informed of that conclusion, nor was she assigned to other work. *Id.* After her injury, the plaintiff learned of the examination's conclusion. *Id.* at 30-31, 22 P3d at 813. She argued that her employer, aware of the examination's results, was certain she would be injured. The court concluded that the "level of certainty [required by *Birklid*] is not present here. It can hardly be said that [the plaintiff's] employer knew she would be injured, or that

injury was such a certainty it should have known." *Id.* at 33, 22 P3d at 814.

Here, plaintiff was required by his employer to be a pedestrian in a congested, noisy, poorly lit yard, among yard goats driven around sharp corners and in close spaces by drivers with relatively less experience, where all persons in the yard were encouraged to hurry. Truck drivers' concerns about the dangerous potential of the conditions were well known to defendant. Defendant even provided some safety measures—reflective vests—to security personnel required to be on the site as pedestrians. Collisions between yard goats and pedestrians at night were certainly foreseeable and may even have been substantially certain. However, unlike *Birklid*, where the employer could be *certain* that exposing the same chemical to a group of employees under the same conditions would result in injury to at least some of them, defendant here was not *certain* of a bad result. As in *Goad*, *Folsom*, and *Judy*, too many variables—most notably the care exercised by the yard goat drivers and the pedestrians— were unknown. Sufficiently similar prior incidents, or some other conditions, might well have provided defendant with sufficient certainty, but such evidence is not present here. The prior accident involving a yard goat driver at the Medford yard is too dissimilar to have provided defendant with notice as to the certainty of injury due to the conditions in the yard at issue.

Plaintiff has not shown that there is a genuine issue of fact or a reasonable inference to be made regarding defendant's "actual knowledge that an injury was certain to occur." We therefore do not reach the second prong of the *Birklid* test, addressing whether defendant "willfully disregarded that knowledge."

Affirmed.