[No. 38308-6-I. Division One. July 28, 1997.]

PAMELA ACKLEY-BELL, *Respondent*, v. SEATTLE SCHOOL DISTRICT No. 1, *Appellant*, THE DEPARTMENT OF LABOR AND INDUSTRIES, *Intervenor*.

---

[17]*State v. Lough*, 125 Wn.2d 847, 863, 889 P.2d 487 (1995).

*William H. Beaver, Jr., Tracy M. Miller,* and *Karr Tuttle Campbell,* for appellant.

*Dimitri Iglitzin* and *Schwerin, Campbell & Barnard, L.L.P.,* for respondent.

*Christine O. Gregoire, Attorney General,* and *John R. Wasberg* and *Maureen A. Mannix, Assistants,* for intervenor.

COLEMAN, J. — On October 22, 1991, Pamela Ackley-Bell was an employee of the Seattle School District on paid leave for union activities. Following a prenegotiation

meeting with union representatives, Ackley-Bell fell and was injured. Ackley-Bell filed a workers' compensation claim with the Department of Labor and Industries, claiming that the District should pay for her injuries. The Department rejected the claim. Ackley-Bell appealed to the Board of Industrial Appeals, which affirmed the Department's order. Ackley-Bell then appealed to Superior Court, where the Department then argued that its order should be reversed. The Superior Court agreed and reversed the Board, holding that the District was responsible because Ackley-Bell was a worker acting in the course of her employment at the time of the accident.

The District appeals, arguing that Ackley-Bell was neither a worker nor acting in the course of employment. A "worker" is defined broadly as every person engaged in the employment of an employer. RCW 51.08.180. Ackley-Bell was thus a District employee, regardless of whether she was engaged in her normal activities that day. A worker is acting "in the course of employment" if she is acting at her employer's direction or in furtherance of her employer's business. RCW 51.08.013. Based on statutory authority, case law, and the facts of this case, we hold that Ackley-Bell's collective bargaining activity was in furtherance of her employer's business. Accordingly, the trial court properly held that Ackley-Bell was entitled to compensation from the District. We therefore affirm.

## FACTS

In 1991, Ackley-Bell worked in food services for the District, generally working five and one half hours per day. Local 609 of the International Union of Operating Engineers acted as the food services employees' collective bargaining representative.

Ackley-Bell was a trustee for Local 609 and received $50 per month. As a trustee, her duties included attending an executive board meeting once a month and approving any reimbursement expenses. She was also a member

of the union negotiating committee. Being a trustee did not entitle or require her to be a member of the negotiating committee. Ackley-Bell did not receive pay or benefits from the Union for time spent on negotiation leave.

Each time Ackley-Bell needed to leave work for contract negotiations, Union representative Dale Daugharty would request the leave from personnel officer Patricia Jones. The District had to grant such a request as long as the proper procedures were followed. While on such leave, Ackley-Bell worked up to sixteen hours a day, although she was paid for only five and a half hours, her normal hours worked. By contrast, when Ackley-Bell performed her food services job, she was paid for all hours worked.

During the fall of 1991, the District and Local 609 were involved in collective bargaining negotiations. Thus, Ackley-Bell was granted union activity leave for the week of October 21, 1991. On October 22, 1991, Ackley-Bell went to a Local 609 strategy meeting at the Union's Labor Temple. The purpose of the meeting was to develop a strategy for the negotiating session with the District scheduled for later that day. After the strategy meeting, the representatives ate lunch and prepared to go to the joint session. As they were about to leave, Ackley-Bell went to retrieve some empty boxes from another member's car. The Union was going to use the boxes to store documents, but Ackley-Bell did not know whether the documents were related to collective bargaining. As she carried the empty boxes back to the building, she fell and was injured.

Margaret Webster, the District's labor relations administrator, testified that the separate sessions were an essential part of the collective bargaining process:

> Q: Now, are the meetings that the management people held, the caucuses or the separate meetings, an essential part of the collective bargaining process?
>
> A: Yes, they are.
>
> Q: Do you assume that the meetings the union holds or the union people hold are an equally essential part of the collective bargaining process?

A: Would I assume?

Q: Yes.

A: I would assume that they are.

Webster also testified that before the October negotiating session, a four-day training course on collective bargaining had been provided for both management and employees. The purpose of the training was "to enhance the bargaining process . . . [f]or the benefit of everyone that was involved in it." In the fall of 1991, the employees and management attempted to implement the principles of the seminar.

In February 1992, Ackley-Bell filed a workers' compensation claim with the Department of Labor and Industries for her October 22, 1991 injury, claiming entitlement from the District. The Department rejected the claim, reasoning that Ackley-Bell was not injured in the course of employment. Ackley-Bell then filed a claim alleging that she was injured while in the course of employment with Local 609. The Department rejected this claim. The cases were consolidated for appeal to the Board.

On December 18, 1992, a hearing was held. About two weeks later, Ackley-Bell moved to reopen the record to add a letter from Webster regarding the District's authority to terminate a person while on leave. The industrial appeals judge denied the motion to reopen the record.

The industrial appeals judge determined that because Ackley-Bell was not acting in the course of her employment with either the District or the Union at the time of her injury, the Department's orders were correct.

Ackley-Bell appealed to Superior Court, where the Department filed a brief urging reversal of its order. The District filed a motion to strike the Department's brief and argument for lack of standing. The court denied that motion, reasoning that the Department had authority to participate in any court proceeding involving a self-insured employer.

The Superior Court reversed the Board, holding that the District was responsible for providing workers' compensation benefits to Ackley-Bell for her injury. In a letter summarizing its ruling, the court cited the excluded Webster letter for the proposition that if Ackley-Bell had taken leave and not participated in the separate or joint meetings, the District could have disciplined her. At a subsequent hearing to discuss the proposed written findings, the District objected to the trial court's consideration of this evidence. In its revised written findings of fact and conclusions of law, the court stated that it considered only the exhibits and testimony admitted before the Board and did not cite the letter.

The court held that Ackley-Bell was a worker acting in the course of her employment because the District had the right to control her physical conduct. The court reasoned that Ackley-Bell was subject to discipline if she acted in an unruly or inappropriate fashion during the collective bargaining process. The court further reasoned that the District had the right to direct that Ackley-Bell be present at the separate and joint meetings for which she had secured the leave and that she conduct herself in a prescribed and appropriate manner. Additionally, the court found that Ackley-Bell's activities were in furtherance of the District's business:

> While individual bargaining sessions may be sometimes adversarial, proper and orderly negotiation of the terms and conditions of employment contributes to avoiding disruption of the District's business. Petitioner's participation in the bargaining process was necessary to achieve a labor contract that mutually benefited employer and employee.

The court further determined that the specific act that Ackley-Bell was engaged in at the time of her injury was "an incidental activity" within normal work time and did not constitute an abandonment of her employment as a participant in collective bargaining.

## *ANALYSIS*

The main issue on appeal is whether Ackley-Bell was a worker in the course of employment when she engaged in a prenegotiation collective bargaining meeting with union representatives. The District argues that Ackley-Bell was neither a "worker" nor acting "in the course of employment" at the time of the injury and therefore should not be compensated.

 "Appellate review is limited to examination of the record to see whether substantial evidence supports the findings made after the superior court's de novo review, and whether the court's conclusions of law flow from the findings." *Young v. Department of Labor & Indus.*, 81 Wn. App. 123, 128, 913 P.2d 402, *review denied*, 130 Wn.2d 1009 (1996). The appellate court "must accord substantial weight to the agency's interpretation of the law." *Littlejohn Constr. Co. v. Department of Labor & Indus.*, 74 Wn. App. 420, 423, 873 P.2d 583 (1994). Because two agencies—the Board and the Department—offer conflicting legal interpretations, we consider the expertise of both agencies. *See, e.g., Flanigan v. Department of Labor & Indus.*, 65 Wn. App. 119, 121, 827 P.2d 1082 (1992), *aff'd*, 123 Wn.2d 418 (1994); *Jackson v. Harvey*, 72 Wn. App. 507, 513, 864 P.2d 975, *review denied*, 124 Wn.2d 1003 (1994); *Belnap v. Boeing Co.*, 64 Wn. App. 212, 216-17, 823 P.2d 528 (1992). Ultimately, however, this is a novel question of law that we review de novo. In so doing, we find the Department's position more persuasive.

To receive workers' compensation, a claimant must be a "worker" injured "in the course of his or her employment[.]" RCW 51.32.010. A "worker" is defined as "every person in this state who is engaged in the employment of an employer under this title, whether by way of manual labor or otherwise in the course of his or her employment[.]" RCW 51.08.180. The District argues that in determining whether a person meets this definition, we should apply a two-prong test adopted by our Supreme

Court in *Novenson v. Spokane Culvert & Fabricating Co.*, 91 Wn.2d 550, 553, 588 P.2d 1174 (1979). Under this test, the court looks at (1) whether the employer had a right to control the servant's physical conduct in the performance of duties and (2) whether the servant consented to this relationship. *Novenson*, 91 Wn.2d at 553.

Ackley-Bell and the Department contend that this test is inapplicable when an employee relationship clearly exists. In other words, they argue that a worker is more broadly defined. The plain language of the statute supports this interpretation. Indeed, in the cases applying the *Novenson* two-prong test, the issue was whether an employment relationship existed between the plaintiff and defendant generally. *See, e.g., Novenson*, 91 Wn.2d at 552-53 (whether plaintiff employed by defendant providing labor to customers on a day-to-day basis); *Harvey*, 72 Wn. App. at 513-14, (whether a worker was employed by contractor or homeowners); *Jones v. Halvorson-Berg*, 69 Wn. App. 117, 121, 847 P.2d 945 (whether employee was loaned servant of another), *review denied*, 122 Wn.2d 1019 (1993); *Smick v. Burnup & Sims*, 35 Wn. App. 276, 277-78, 666 P.2d 926 (1983) (whether plaintiff who volunteered for defendant was an employee).

Here, it is undisputed that Ackley-Bell was employed with the District in October 1991. She is thus a "worker." We therefore need not conduct the *Novenson* two-prong inquiry.

A worker is " '[a]cting in the course of employment' " when "acting at his or her employer's direction or in the furtherance of his or her employer's business[.]" RCW 51.08.013; *see Department of Labor & Indus. v. Johnson*, 84 Wn. App. 275, 278, 928 P.2d 1138 (1996), *review denied*, 131 Wn.2d 1025 (1997). Whether the employee was being paid their full salary while on leave is not determinative. *Belnap*, 64 Wn. App. at 220.

The District argues that collective bargaining is essentially a negative process that does not advance its business. Statutory authority as well as case law belies this

position. In stating the purpose of public employees collective bargaining, the Legislature stated, "[t]he intent and purpose of [the collective bargaining statute] is to promote the continued improvement of the relationship between public employers and their employees[.]" RCW 41.56.010. Additionally, our Supreme Court has recognized that union activity does not solely benefit the Union. *State v. Northshore Sch. Dist. 417*, 99 Wn.2d 232, 243-44, 662 P.2d 38 (1983).

Additionally, testimony indicates that, in this case, the collective bargaining process was in furtherance of the District's interests. Specifically, Webster testified that the new, collaborative collective bargaining process was for the benefit of everyone—labor and management. Collective bargaining is thus not incidental to the District. *Cf. Belnap*, 64 Wn. App. at 220 (paid jury duty incidental to employer's business interest). Rather, it is an integral part of creating and promoting working labor relations, which directly relate to an employer's business interest. Thus, we hold that because Ackley-Bell was engaged in collective bargaining, she was furthering the District's interests.

■ The District argues that even if it received some benefit from the bargaining activities of the union negotiators, Ackley-Bell was not engaged in bargaining at the time of her injury because she was at a union meeting, not a joint meeting. Guiding construction of the Industrial Insurance Act is the principle that the act is remedial in nature and therefore must be liberally construed to achieve the purpose of providing compensation to all covered employees injured in their employment. Thus, all doubts must be resolved in favor of the worker. *Littlejohn*, 74 Wn. App. at 425. Webster testified that separate meetings were an essential part of the collective bargaining process for management. Her testimony, as well as common sense, indicates that labor prenegotiation meetings were also vital to the collective bargaining process. Indeed, it is difficult to see how a union could bargain effectively

without meeting separately to arrive at a united position. We conclude that because the separate meeting was to enhance participation in the joint meeting to follow, the activity furthered the District's interest. We therefore need not decide whether the District "directed" Ackley-Bell's activities.

The District argues that even if the collective bargaining activities furthered its interest, the trial court erred because Ackley-Bell was injured engaging in an activity unrelated to collective bargaining. Coverage will not be provided if the employee was on a personal errand but will be provided if the activity was " 'inseparably inter-mingled and interwoven with' " the employment. *See Bice v. Anderson*, 52 Wn.2d 259, 264, 324 P.2d 1067 (1958). Here, the trial court determined that the boxes were un-related to Union activity. Even so, Ackley-Bell's deviation was a brief and incidental diversion, not an "extensive personal activit[y]." *See Johnson*, 84 Wn. App. at 280 (denying coverage for employee on paid disciplinary leave injured while working on personal activity at home). We conclude that the circumstances of the injury do not pre-clude recovery.

The District also argues that the trial court erroneously considered matters outside the record by considering a let-ter that the Board had declined to admit. Ackley-Bell argues that the trial court is entitled to consider all evi-dence submitted to the Board, not just the admitted evi-dence.

■ Although a trial court's review of the Board's deci-sion is de novo, "the court shall not receive evidence or testimony other than, or in addition to, that offered before the board or included in the record filed by the board in the superior court[.]" RCW 51.52.115. While the trial court can rule independently on evidentiary issues, it can consider only matters that have first been presented to the Board and preserved in the Board's record for review. *Sepich v. Department of Labor & Indus.*, 75 Wn.2d 312, 316-17, 450 P.2d 940 (1969).

While the trial court can make evidentiary rulings on other matters that were before the Board, Ackley-Bell did not ask the court to make such a ruling here. Thus, the trial court should not have considered the letter because it was not admitted into evidence nor was its exclusion raised on appeal to the Superior Court. To the extent that the court erroneously considered such evidence, it was harmless error because the letter related only to the issues of control and direction. As discussed, these issues are immaterial to this decision.

We finally consider whether the trial court erred in denying the District's motion to strike the brief and argument of the Department. The District argues that the Department has no standing to appeal its own order. The Department generally cannot appeal from an adverse decision by the Board. *Department of Labor & Indus. v. Cook,* 44 Wn.2d 671, 674, 269 P.2d 962 (1954); RCW 51.52.060. In any case involving a self-insurer, however, the Department "may appear and take part in any proceedings." RCW 51.52.110. Here, the Department did not appeal. The District is self-insured, and the Department is therefore entitled to appear and take part in the proceedings.

The District's request for attorney fees and costs is denied.

Affirmed.

KENNEDY, A.C.J., and WEBSTER, J., concur.