[No. 19546-5-III.   Division Three.   July 26, 2001.]

ROBERT D. STELTER, *Appellant,* v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Respondent.*

*Gregory S. Nelson* (of *Prediletto, Halpin, Scharnikow & Nelson, P.S.*), for appellant.

*Christine O. Gregoire, Attorney General,* and *Timothy S. Hamill, Assistant*; and *Kevan T. Montoya* and *Garon Jones,* for respondent.

KATO, J. — Robert D. Stelter appeals a superior court summary judgment order affirming a decision by the Department of Labor and Industries denying his claim for workers' compensation benefits. He contends there is at least a factual question regarding whether his employer was engaged exclusively in interstate commerce and, thus,

was not properly exempted from mandatory coverage under the Industrial Insurance Act. We agree and reverse.

Mr. Stelter began working as a truck driver for Drotzmann, Inc., in 1996. He was unaware that a second corporation, Drotzmann Intrastate Trucking, operated from the same business offices in Yakima. Drotzmann, Inc., has a permit from the Interstate Commerce Commission and has no authority to operate intrastate trips. Drotzmann Intrastate Trucking operates in Washington under authority of the Washington Utilities and Transportation Commission.

Drotzmann, Inc., leases its trucks and drivers to Drotzmann Intrastate Trucking for intrastate trips within Washington. Trucks used in both businesses bear the words "Drotzmann, Inc." In the course of his employment, Mr. Stelter drove both interstate and intrastate trips, but he never drove trips that mixed interstate and intrastate loads. He believed he was working for Drotzmann, Inc., even when he was making intrastate trips. He took his instructions from a Drotzmann, Inc., supervisor and was paid by checks listing his employer as Drotzmann, Inc.

Drotzmann, Inc., and Drotzmann Intrastate Trucking have different owners, but both are owned by members of the same family.[1] The companies keep separate corporate books and file separate tax returns. Although they do not commingle revenue or expenses, they share payroll and other documents for administrative purposes. A single controller provides accounting services for both companies. Drotzmann Intrastate Trucking pays industrial insurance premiums for hours worked on its intrastate trips; Drotzmann, Inc., does not pay premiums for hours worked on its interstate trips.

Mr. Stelter was injured in 1997 while working for Drotzmann, Inc. He filed a claim for workers' compensation benefits with the Department of Labor and Industries. The

---

[1] Joseph and Dorothy Drotzmann own Drotzmann, Inc. Their sons, Arnold, Rodney, and Greg Drotzmann own Drotzmann Intrastate Trucking. Greg Drotzmann also is president of Drotzmann, Inc.

Department rejected the claim because it concluded Mr. Stelter was excluded from mandatory coverage and his employer had not elected to provide coverage. Mr. Stelter appealed to the Board of Industrial Insurance Appeals, which affirmed the Department's order, with one member dissenting.

Mr. Stelter then appealed to the superior court, and Drotzmann, Inc., moved for summary judgment. The court granted the motion, holding Drotzmann, Inc., was exclusively engaged in interstate commerce and thus was excluded from mandatory workers' compensation coverage. Mr. Stelter now appeals this order.

■■■■ We recently articulated the appropriate standard of review:

> Judicial appeal of a decision by the Board of Industrial Insurance Appeals is de novo, but is based solely on the evidence and testimony presented to the Board. RCW 51.52.115; *Johnson v. Weyerhaeuser Co.*, 134 Wn.2d 795, 800 n.4, 953 P.2d 800 (1998); *Department of Labor & Indus. v. Fankhauser*, 121 Wn.2d 304, 308, 849 P.2d 1209 (1993); *McClelland v. ITT Rayonier, Inc.*, 65 Wn. App. 386, 828 P.2d 1138 (1992). The Board's findings and conclusions are considered prima facie correct, although "[t]he superior court may substitute its own findings and decision for the Board's if it finds, 'from a fair preponderance of credible evidence,' that the Board's findings and decisions are incorrect." *McClelland*, 65 Wn. App. at 390 (quoting *Weatherspoon v. Department of Labor & Indus.*, 55 Wn. App. 439, 440, 777 P.2d 1084, *review denied*, 113 Wn.2d 1030 (1989)). Either party is entitled to a jury trial to resolve factual disputes. RCW 51.52.115. A superior court's review is subject to the civil appeal rules, including those for summary judgment. RCW 51.52.140; *McClelland*, 65 Wn. App. at 390.
>
> On review of a summary judgment order, an appellate court's inquiry is the same as the superior court's. *Our Lady of Lourdes Hosp. v. Franklin County*, 120 Wn.2d 439, 451, 842 P.2d 956 (1993); *see Fankhauser*, 121 Wn.2d at 308. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c). The burden is on the party seeking summary judgment to establish its right to judgment as a matter of law, and the court must consider facts and reasonable inferences from the facts in favor of the nonmoving party. *Our Lady of Lourdes*, 120 Wn.2d at 452.

*Romo v. Dep't of Labor & Indus.*, 92 Wn. App. 348, 353-54, 962 P.2d 844 (1998). "A 'material fact' is a fact upon which the outcome of the litigation depends, in whole or in part." *Morris v. McNicol*, 83 Wn.2d 491, 494, 519 P.2d 7 (1974).

■ The Industrial Insurance Act must be "liberally construed for the purpose of reducing to a minimum the suffering and economic loss arising from injuries and/or death occurring in the course of employment." RCW 51.12.010; *see Ochoa v. Dep't of Labor & Indus.*, 143 Wn.2d 422, 425-26, 20 P.3d 939 (2001). RCW 51.12.095(1) generally requires common carriers that are engaged exclusively in interstate commerce to provide workers' compensation coverage. However, the statute includes the following proviso:

> [A]ny common or contract carrier or its successor that formerly had coverage under this title and by virtue of being exclusively engaged in interstate or foreign commerce, or any combination thereof, withdrew its acceptance of liability under this title by filing written notice with the director of the withdrawal of its acceptance prior to January 2, 1987, shall be governed by the provisions of this section that were in effect as of that date.

RCW 51.12.095(1). Before this proviso was added in 1989, the statute provided:

> Common or contract carriers domiciled in this state that are engaged exclusively in interstate or foreign commerce, or any combination thereof, may elect coverage under this title in the manner provided by RCW 51.12.110 for their employees.

Former RCW 51.12.095(1) (1983) (LAWS OF 1983, ch. 170, § 2).

It is undisputed that Drotzmann, Inc., provided notice, as required by the current statute's proviso, that it was

withdrawing its acceptance of liability. Drotzmann, Inc., thus was governed by the prior version of the statute, which permitted but did not require it to provide workers' compensation coverage.

Mr. Stelter contends, however, that Drotzmann, Inc., was not entitled to the exemption from coverage because it was not *exclusively* engaged in interstate commerce. He reasons that because he did not even know of the existence of Drotzmann Intrastate Trucking, he could not have had an employment relationship with that business. He further reasons that because he was employed only by Drotzmann, Inc., (even when he was driving on intrastate trips), Drotzmann, Inc., was engaged in interstate *and* intrastate commerce.

■ For an employment relationship to exist for worker's compensation purposes, there must be a mutual agreement between the employer and the employee. *Fisher v. City of Seattle*, 62 Wn.2d 800, 804-06, 384 P.2d 852 (1963). In *Fisher*, Standard Stations, Inc. (Standard Stations) hired the plaintiff as a gas station attendant. Standard Stations, a corporation wholly owned by Standard Oil Company of California (Standard Oil), entered into an agreement with Standard Oil under which Standard Stations would operate Standard Oil's service stations and Standard Oil would provide administrative services. *Id.* at 801-02. A second wholly owned corporation, Western Operations, Inc. (Western), later took over Standard Oil's responsibilities under the agreement. *Id.* at 802. In the plaintiff's suit for damages from an explosion at the service station, Standard Oil and Western contended they were exempt under the Industrial Insurance Act because they were employers. *Id.* at 803.

The Supreme Court disagreed, noting that in the "lent servant" situation, "it is a well-established rule that an employee cannot have an employer thrust upon him against his will or without his knowledge." *Id.* at 805 (citing *Barney v. Anderson*, 116 Wash. 352, 199 P. 452 (1921); 3 WILLIAM R. SCHNEIDER, SCHNEIDER'S WORKMEN'S COMPENSATION TEXT § 782 (perm. ed. (1943))). Under the workers' compensation law,

the court held, an employment relationship cannot exist without the consent of the worker. *Fisher*, 62 Wn.2d at 806. The court thus reversed a lower court's dismissal on summary judgment and held that because the plaintiff was not aware of his employer's relationship with Standard Oil or Western, those corporations could not have been his employers. *Id.* at 807-08.

Similarly here, Mr. Stelter has presented evidence that he was not aware even of the existence of Drotzmann Intrastate Trucking and thus could not have been its employee. Although Drotzmann, Inc., has presented evidence that it routinely informs its new drivers that they will be working for Drotzmann Intrastate Trucking when hauling intrastate loads, this is a factual question that may not be resolved on summary judgment. This case thus must be returned to the superior court to determine whether Mr. Stelter in fact consented to his employment with Drotzmann Intrastate Trucking.

The superior court's order on summary judgment is reversed.

KURTZ, C.J., concurs.

SWEENEY, J. (dissenting) — For me, the dispositive question in this appeal is whether Drotzmann, Inc., is engaged exclusively in "interstate trucking." It is. And there is no evidence in this record from which anyone could conclude otherwise, Robert Stelter's subjective belief notwithstanding.

The Board of Industrial Insurance Appeals properly concluded that Mr. Stelter's belief was irrelevant: "Mr. Stelter's subjective belief, no matter how credible, that he worked for Drotzmann, Inc., while making intrastate trips cannot change the nature of the firm's business from exclusively interstate in nature." *In re Stelter*, No. 98 18480, Bd. of Ind. Ins. Appeals Dec. and Order 3 (Wash. Mar. 23, 2000).

Mr. Stelter contends the Board's decision failed to consider the reasonableness of his belief that he worked only for Drotzmann, Inc. He relies on a two-part test to deter-

mine whether there is an employment relationship under the Industrial Insurance Act: (1) Does the employer have the right to control the person's physical conduct in the performance of his duties? and (2) Has the person consented to the relationship? *Novenson v. Spokane Culvert & Fabricating Co.*, 91 Wn.2d 550, 553, 588 P.2d 1174 (1979); *see Jackson v. Harvey*, 72 Wn. App. 507, 515, 864 P.2d 975 (1994); *Smick v. Burnup & Sims*, 35 Wn. App. 276, 277-78, 666 P.2d 926 (1983).

Mr. Stelter contends that, applying this test and viewing the facts and inferences in his favor, he was not an employee of Drotzmann Intrastate Trucking. But the *Novenson* two-part test is used to determine whether a person is a "worker" entitled to benefits under RCW 51.32.010.[2] *Ackley-Bell v. Seattle Sch. Dist. No. 1*, 87 Wn. App. 158, 165-66, 940 P.2d 685 (1997). It does not apply when an employment relationship "clearly exists." *Id*. at 166. There is no dispute here that Mr. Stelter was a "worker." The *Novenson* two-part test then does not apply.

As the Board reasoned, whether a corporation is engaged exclusively in interstate commerce does not turn on an employee's subjective beliefs. The Department of Labor and Industries' regulations, although not directly related to this issue, support a conclusion that the analysis is purely objective. "Interstate trucking" is defined as "the hauling of goods that either originate out of state or have an out-of-state destination." WAC 296-17-537 Classification 1102-02. "Intrastate trucking" is defined as "the hauling of goods *only* within the boundaries of a state. In other words, the goods must have both an origin and destination in the same state." WAC 296-17-537 Classification 1102-03.

The relationship between Drotzmann, Inc., and Drotzmann Intrastate Trucking was not unlawful. And Drotzmann, Inc.'s policy was to inform newly hired drivers

---

[2] The statute provides generally that to receive worker's compensation a worker must have been injured in his or her employment. RCW 51.32.010. A "worker" is defined generally as a "person in this state who is engaged in the employment of an employer under this title, whether by way of manual labor or otherwise in the course of his or her employment." RCW 51.08.180.

that for intrastate trips they would be working under the authority of Drotzmann Intrastate Trucking. Certified Appeal Bd. R., Tr. (May 28, 1999) at 17. Drivers' intrastate hours were tracked, and Drotzmann Intrastate Trucking paid industrial insurance premiums to the Department for those hours. *Id.* at 37, 50-51. Drivers were informed that, when they were hauling interstate trips and working for Drotzmann, Inc., they were not covered by the workers' compensation system. *Id.* at 17.

The businesses' controller testified that the reason Drotzmann, Inc., did not haul both interstate and intrastate loads was because it would not be exempt from paying workers' compensation premiums. Mr. Stelter stipulated that he was working for Drotzmann, Inc., at the time of his injury. And it is uncontested that he was on an interstate job at the time of the injury.

The exemption from Labor and Industries' coverage is specifically authorized by the Legislature. Mr. Stelter's belief that there was only one employer thus is not a fact that is material here. The superior court properly granted summary judgment and affirmed the Board's decision.

I would affirm the court's decision.

Review granted at 145 Wn.2d 1020 (2002).