[No. 47877-0-I.   Division One.   February 11, 2002.]

GARLAND RAY RIDEAU, *Appellant*, v. CORT FURNITURE RENTAL, ET AL., *Respondents*.

*Susan R. Sampson* (of *Sampson & Wilson, Inc. P.S.*) and *Philip A. Talmadge* (of *Talmadge & Stockmeyer, P.L.L.C.*), for appellant.

*John C. Moore* (of *Bonneville, Viert, Morton & McGoldrick*), for respondents.

GROSSE, J. — For purposes of Washington's Industrial Insurance Act, an employee-employer relationship exists only where (1) the employer has the right to control the servant's physical conduct in the performance of his duties, and (2) there is consent by the employee to this relationship. Whether a situation satisfies both prongs is a question of fact, and there must be clear evidence of a mutual agreement between the employee and employer. Here, substantial conflicting evidence exists on the issue of Garland Ray Rideau's consent to control by Cort Furniture Rental. Thus, summary judgment was inappropriate.

## FACTS

Rideau was hired by Occupational Resource Management, Inc. (ORM), a labor service corporation that provides employees on a temporary basis to various businesses. ORM hired, fired, and compensated all of its employees, paid Washington industrial insurance premiums, and withheld taxes from the employees' paychecks. ORM's employee handbook governed its employees' conduct, even while they worked on temporary jobs at other companies. ORM's customers provided the necessary training, supervision, and tools for each job.

ORM had a contract to provide temporary employees to Cort Furniture Rental (Cort). ORM offered Rideau a temporary job with Cort and Rideau accepted the job. Rideau reported to work at ORM before going to the Cort workplace

and received paychecks from ORM. However, Cort super-vised Rideau's work, Rideau followed Cort's directions, and Rideau expressed no concerns about Cort's supervision. Nevertheless, Rideau stated that he did not believe Cort was his employer or that he was Cort's employee; he considered ORM to be his employer. About six weeks after hire by ORM, while still a temporary employee with Cort, Rideau was a passenger in a vehicle driven by a permanent Cort employee. The vehicle collided with the rear end of another vehicle stopped at an intersection, and Rideau sustained injuries.

Rideau filed a claim with and received industrial insur-ance benefits from the Washington Department of Labor and Industries. After that claim closed, Rideau filed a negligence action against Cort. In response, Cort argued that because Rideau was a loaned servant, Cort possessed statutory immunity from common law suit under Washing-ton's Industrial Insurance Act, Title 51 RCW.[1] The trial court agreed and found that both factors of the loaned servant test existed: Cort had exclusive control over Rideau,[2] and Rideau consented to the relationship. Thus, the court found Cort entitled to summary judgment as a matter of law. Rideau appeals, claiming that only ORM was his employer, and thus Cort does not deserve statutory immunity.[3]

## DISCUSSION

■ ■ "For purposes of workmen's compensation, an employment relationship exists only when: (1) the employer has the right to control the servant's physical conduct in the performance of his duties, and (2) there is consent by the

---

[1] RCW 51.04.010.

[2] An employer need not prove exclusive control over an employee to satisfy the loaned servant test. *Scott R. Sonners, Inc. v. Dep't of Labor & Indus.*, 101 Wn. App. 350, 357-58, 3 P.3d 756, *review denied*, 142 Wn.2d 1008 (2000).

[3] We apply the usual standard of review for summary judgment. *Wilson v. Steinbach*, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982).

employee to this relationship."[4] Thus, while an employer may "loan" an employee to another, the borrowing employer will not become an "employer" for purposes of Title 51 RCW unless a *mutual agreement* exists between the loaned servant or "borrowed employee" and the borrowing employer.[5] The burden of avoiding liability on the basis of the loaned servant doctrine is on the person claiming it, the party attempting to gain the benefits of statutory immunity from common law suit.[6] Where the facts on the record conflict on this issue, summary judgment is improper.[7]

The primary issue here, as in all loaned servant cases, is whether Rideau consented to an employer-employee relationship with Cort such that a *mutual* agreement existed between them.[8] Under Washington's workmen's compensation law, we focus on the employee and the employee's consent to the employment relationship.[9]

One of the first Washington cases to address workmen's compensation law in conjunction with the loaned servant doctrine, *Fisher v. City of Seattle*, emphasized that "an

---

[4] *Novenson v. Spokane Culvert & Fabricating Co.*, 91 Wn.2d 550, 553, 588 P.2d 1174 (1979) (citing *Marsland v. Bullitt Co.*, 71 Wn.2d 343, 428 P.2d 586 (1967); *Fisher v. City of Seattle*, 62 Wn.2d 800, 384 P.2d 852 (1963)).

[5] *Fisher*, 62 Wn.2d at 804.

[6] *Davis v. Early Constr. Co.*, 63 Wn.2d 252, 256-57, 386 P.2d 958 (1963).

[7] *Smick v. Burnup & Sims*, 35 Wn. App. 276, 277-79, 666 P.2d 926 (1983) (summary judgment improper in determining whether either prong of the *Novenson* test was met).

[8] The control issue was not seriously argued on appeal. However, control and consent are inextricably intertwined in loaned servant cases. To the extent that control is at issue, various factors apply. These factors include:

"an agreement for close supervision or *de facto* close supervision of the servant's work"; unskilled labor; tools supplied by the employer; payment by time not the job; regular employment over a considerable time; employment in a specific area; regular business of the employer; community custom; belief by the parties there is a master and servant relationship; and an agreement the work is nondelegable.

*Jones v. Halvorson-Berg*, 69 Wn. App. 117, 122-23, 847 P.2d 945 (1993) (quoting RESTATEMENT (SECOND) OF AGENCY § 220 cmt. h, at 489 (1958)).

[9] *Fisher*, 62 Wn.2d at 804; *Novenson*, 91 Wn.2d at 553; *Jones*, 69 Wn. App. at 121-22; *Stelter v. Dep't of Labor & Indus.*, 107 Wn. App. 477, 482-83, 27 P.3d 650 (2001).

employee cannot have an employer thrust upon him against his will or without his knowledge."[10] *Fisher* involved an employee hired by Standard Stations, Inc. (Standard Stations), who was injured through the negligence of Western Operations, Inc. (Western Operations). Standard Stations and Western Operations were both wholly owned subsidiaries of Standard Oil Company of California.[11] The employee sued Western Operations, which claimed statutory immunity under the workmen's compensation law. The trial court granted summary judgment to Western Operations finding that because the three companies were interrelated, the plaintiff was an employee of Western Operations. The Washington Supreme Court reversed and held that Western Operations was not immune from common law suit because the loaned servant doctrine applied to workmen's compensation cases. Thus, employee consent to the relationship was required so that a *mutual* agreement existed between the employee and employer.[12] Since the employee was unaware that the two companies were related, consent to an employer-employee relationship did not exist.[13]

The case of *Novenson v. Spokane Culvert & Fabricating Co.* dealt with a situation very similar to that here.[14] In *Novenson*, the employee was hired by Kelly Labor of Northwest, Inc. (Kelly Labor), a temporary agency, dispatched to Spokane Culvert & Fabricating Company (Spokane Culvert), and reassigned daily to Spokane Culvert at his request. The employee's hands were crushed in an industrial machine accident on his third day of work at Spokane Culvert. The employee sued Spokane Culvert for negligence

---

[10] *Fisher v. City of Seattle*, 62 Wn.2d 800, 805, 384 P.2d 852 (1963) (citing *Barney v. Anderson*, 116 Wash. 352, 199 P. 452 (1921)). *See also Murray v. Union Ry. of N.Y. City*, 229 N.Y. 110, 127 N.E. 907 (1920).

[11] *Fisher*, 62 Wn.2d at 801.

[12] *Fisher*, 62 Wn.2d at 804-05.

[13] *Fisher*, 62 Wn.2d at 806.

[14] *Novenson v. Spokane Culvert & Fabricating Co.*, 91 Wn.2d 550, 588 P.2d 1174 (1979).

and the trial court granted Spokane Culvert's motion for summary judgment on the basis that Novenson was an employee of Spokane Culvert under the loaned servant doctrine. However, evidence existed which illustrated that the employee had not consented to an employment relationship with Spokane Culvert and believed that Kelly Labor was his employer. The Washington Supreme Court reversed, stating that " 'compensation law demands that, in order to find an employer-employee relation, a *mutual* agreement must exist between the employer and employee.' "[15] Furthermore, the court emphasized that the "trier of fact at trial is the one to draw any inferences as to [the employee's] understanding and consent vis-a-vis an employment relationship with Spokane Culvert."[16]

Although the dissent in *Novenson* pointed out that summary judgment was granted in similar circumstances in other states, we must note that the majority declined to apply the reasoning of those cases to determine the issue.[17] Furthermore, the majority in *Novenson* highlighted the public policy implications of the workmen's compensation scheme in Washington:

> When the party asserting the existence of an implied employment relation is not an employee seeking statutory compensation, but an employer seeking a defense to a common-law suit, different social values are at stake. In the former situation, if an employment agreement is established, moderate statutory benefits are available to the injured worker; however, reaching such a conclusion in the second situation results in the destruction of valuable common-law rights to the injured workman.[18]

More recent cases discussing workmen's compensation and the loaned servant doctrine apply the reasoning of

---

[15] *Novenson*, 91 Wn.2d at 553-54 (quoting *Fisher*, 62 Wn.2d at 804).

[16] *Novenson*, 91 Wn.2d at 555.

[17] *Novenson*, 91 Wn.2d at 558 (Dolliver, J., dissenting).

[18] *Novenson*, 91 Wn.2d at 554-55 (citing 1B Arthur Larson, Workmen's Compensation Law §§ 47.42(a), 48.10 (1978)).

*Novenson* and *Fisher*.[19] In *Jones v. Halvorson-Berg*, Jones was a laborer hired by Halvorson-Berg, a general contractor.[20] Flour City Architectural Metals Corporation (Flour City), a subcontractor, was responsible for manufacturing and installing the windows for the building Halvorson-Berg was remodeling.[21] Halvorson-Berg instructed Jones to help unload windows from Flour City's truck, Jones was injured, and he sued Flour City, among others, for negligence.[22] After hearing testimony on both the issues of control and consent, the trial court found as a matter of law that Jones was not a loaned servant.[23] The Court of Appeals held that the issue of whether an employee is a loaned servant is factual and properly one for the jury.

We find that the case law is clear; both control of the employer and consent of the employee are required to establish an employment relationship. With respect to consent, there must be clear evidence of a *mutual agreement* between the employee and employer such that the employee has clearly consented to be the "employee" of the "employer."[24]

An employee's subjective belief as to the existence of an employer-employee relationship is material to the issue of consent.[25] Although Rideau accepted a job with Cort from ORM, Rideau also stated that he considered ORM to be his sole employer. This fact alone raises the question of

---

[19] *Hildahl v. Bringolf*, 101 Wn. App. 634, 5 P.3d 38 (2000) (summary judgment improper where employee presented evidence he did not consent to an employment relationship); *Stelter*, 107 Wn. App. at 480 (summary judgment improper where employee presented evidence he did not consent to the employer-employee relationship).

[20] *Jones v. Halvorson-Berg*, 69 Wn. App. 117, 847 P.2d 945 (1993).

[21] *Jones*, 69 Wn. App. at 119.

[22] *Jones*, 69 Wn. App. at 120-21.

[23] *Jones*, 69 Wn. App. at 121.

[24] *Novenson*, 91 Wn.2d at 553-54; *Fisher*, 62 Wn.2d at 804-05.

[25] *Fisher*, 62 Wn.2d 800 (employee believed he was working for subsidiary, not parent company; Supreme Court found subjective belief relevant); *Jackson v. Harvey*, 72 Wn. App. 507, 864 P.2d 975 (1994) (employee believed he was working for contractor; Court of Appeals found this relevant).

whether Rideau consented to the role of "employee" to Cort and whether a mutual agreement existed. Considering all the material evidence and all reasonable inferences most favorably toward Rideau, the evidence shows there is a genuine dispute as to the issue of consent. Thus, summary judgment was inappropriate.

Rideau further urges this court to hold as a matter of law that the loaned servant doctrine is inapplicable to employees of temporary employment agencies under RCW 51.04.060. We express skepticism that after the *Novenson* line of cases, companies contracting with these temporary agencies for their employment needs can ever obtain immunity from common law suit under the loaned servant doctrine. The clear line of cases after *Fisher* and *Novenson* illustrate that borrowing employers like Cort have a high burden in Washington to prove consent of the employee in order to gain the shield of the Department of Labor and Industries' statutory immunity.[26] Nevertheless, whether they should always lose this immunity is more properly a legislative decision. Thus, we decline to rule on this issue.

This case is reversed and remanded for further proceedings consistent with this opinion.

COLEMAN and APPELWICK, JJ., concur.

---

[26] *See, e.g., Stelter*, 107 Wn. App. 477 (some conflicting evidence on issue regarding consent rendered summary judgment improper).