57 P.3d 248 (2002)
Robert D. STELTER, Respondent,
v.
DEPARTMENT OF LABOR AND INDUSTRIES OF THE STATE of Washington, Respondent,
Drotzmann, Inc., Petitioner.
No. 71536-0.
Supreme Court of Washington, En Banc.
Argued May 21, 2002.
Decided November 7, 2002.
*249 Velikanje Moore & Shore, Kevan Montoya, Yakima, for Petitioner.
Timothy Hamill, Yakima, Prediletto Halpin Scharnikow & Nelson, Gregory Nelson, Yakima, for Respondent.
MADSEN, J.
Following an injury sustained while working for Drotzmann, Inc., Robert Stelter filed a claim for workers' compensation insurance with the Department of Labor and Industries (Department). The Department denied the claim on the ground that Drotzmann, Inc., was excluded from mandatory coverage and had not elected to provide it. Mr. Stelter appealed to the Board of Industrial Insurance Appeals (Board), which affirmed the Department's order. He then appealed to the superior court, which also affirmed. In a split decision, the Court of Appeals reversed. Stelter v. Dep't of Labor & Indus., 107 Wash. App. 477, 27 P.3d 650 (2001), review granted, 145 Wash.2d 1020, 41 P.3d 483 (2002). We reverse the Court of Appeals.

FACTS
Drotzmann, Inc., is a common carrier operating interstate under authority from the Interstate Commerce Commission. As a part of its business operations Drotzmann, Inc., leases its trucks and drivers to Drotzmann Intrastate Trucking, which is engaged in intrastate transportation under the authority of the Washington Utilities and Transportation Commission. Until July 1986, Drotzmann, Inc., paid industrial insurance premiums for its employees working interstate. In July, 1986, Drotzmann, Inc., filed a written request for exempt status as a common carrier engaged in interstate commerce, pursuant to former RCW 51.12.095 (1983). Since then, Drotzmann, Inc., has not paid industrial insurance premiums.[1]
In 1996, Mr. Stelter joined Drotzmann, Inc., as an interstate driver. One or two times a month Mr. Stelter drove an intrastate load under the lease agreement between Drotzmann, Inc., and Drotzmann Intrastate Trucking. Mr. Stelter never drove a mixed interstate and intrastate load.
On August 10, 1997, Stelter was injured in New York while on an interstate trip for Drotzmann, Inc., Mr. Stelter filed an application for industrial insurance benefits with the Department. The Department issued an order rejecting the claim because Mr. Stelter "was excluded from mandatory coverage under the provisions of the industrial insurance laws and the employer had not made provisions for coverage by means of elective adoption." Certified Appeal Bd. R. (CABR) at 39. Mr. Stelter appealed to the Board, which entered the following unchallenged findings of fact.
1. On October 27, 1997, the claimant, Robert D. Stelter, filed an application for benefits with the Department of Labor and Industries alleging that he sustained an industrial injury on August 10, 1997, while in the course of employment for Drotzmann, Inc. On November 10, 1997, the Department issued an order rejecting the claim on the grounds that the claimant was excluded from mandatory coverage. On November 21, 1997, the claimant protested the November 10, 1997 order. On December 5, 1997, the Department issued an order affirming the order of November 10, 1997. On December 19, 1997, the claimant protested the December 5, 1997 order to the Department of Labor and Industries. On September 28, 1998, the Department forwarded the protest to the Board of Industrial Insurance Appeals as an appeal *250 from the December 5, 1997 order. On October 26, 1998, the Board issued an order granting the appeal subject to timeliness and assigned it Docket No. 98 18480.
2. Mr. Stelter began driving trucks for Drotzmann, Inc., in December of 1996.
3. Drotzmann, Inc., is a common carrier engaged exclusively in interstate commerce. Drotzmann Intrastate Trucking is a separately owned company engaged in intrastate commerce. Drotzmann, Inc., provides drivers and trucks to Drotzmann Intrastate Trucking for intrastate trips pursuant to a written lease agreement between Drotzmann Intrastate Trucking and Drotzmann, Inc.,
4. Between December of 1996 and August of 1997, Mr. Stelter made several intrastate trips as a truck driver, usually during the periods between the longer interstate trips. Mr. Stelter believed that Drotzmann, Inc., employed him when he made these trips, although he and the truck he drove had been leased from Drotzmann, Inc., to Drotzmann Intrastate Trucking pursuant to the written agreement.
CABR at 5-6.
The Board concluded that neither the leasing of vehicles to Drotzmann Intrastate Trucking nor Mr. Stelter's subjective belief about his employer's business required finding that Drotzmann, Inc., was not engaged exclusively in interstate commerce.[2] Because Stelter's injury occurred while he was working interstate for a common carrier engaged exclusively in interstate commerce that elected not to provide coverage, the Board affirmed the Department's order.
Mr. Stelter appealed the Board's decision to the superior court. Drotzmann, Inc., moved for and was granted summary judgment. In affirming the Board's order denying Stelter's claim, the trial court ruled as a matter of law that Drotzmann, Inc.'s second business of leasing vehicles and drivers to another company did not support a finding that Drotzmann, Inc., engaged in intrastate commerce. Mr. Stelter appealed to the Court of Appeals, which reversed.

ANALYSIS
RCW 51.52.110 and RCW 51.52.115 govern judicial review of matters arising under the Industrial Insurance Act. When a party appeals from a board decision, and the superior court grants summary judgment affirming that decision, the appellate court's inquiry is the same as that of the superior court. Our Lady of Lourdes Hosp. v. Franklin County, 120 Wash.2d 439, 451, 842 P.2d 956 (1993). Appellate review is based solely on the evidence and testimony presented to the Board. RCW 51.52.115; Johnson v. Weyerhaeuser Co., 134 Wash.2d 795, 800 n. 4, 953 P.2d 800 (1998). Summary judgment is properly granted when the pleadings, affidavits, depositions, and admissions on file demonstrate there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c); Clements v. Travelers Indem. Co., 121 Wash.2d 243, 249, 850 P.2d 1298 (1993).
The question presented in this case is whether an employer's exemption from mandatory industrial insurance coverage as a common carrier engaged in interstate commerce can be overcome by an employee's subjective belief that he worked for the interstate carrier on intrastate deliveries.
RCW 51.12.095(1) of the Industrial Insurance Act provides:
Common or contract carriers doing business in this state that are engaged exclusively in interstate or foreign commerce, or any combination thereof, shall provide coverage under this title for their Washington employees, unless the employer has furnished workers' compensation insurance coverage under the laws of another state for the coverage of employees in this state: PROVIDED, That any common or contract carrier or its successor that formerly had coverage under this title and by virtue of being exclusively engaged in interstate or foreign commerce, or any combination thereof, withdrew its acceptance of liability under this title by filing written notice with *251 the director of the withdrawal of its acceptance prior to January 2, 1987, shall be governed by the provisions of this section that were in effect as of that date.
The parties do not dispute that Drotzmann, Inc., satisfied the withdrawal requirements of RCW 51.12.095(1). Thus, the company's obligation to provide coverage is governed by former RCW 51.12.095(1), in effect prior to 1987, which provided:
Common or contract carriers domiciled in this state that are engaged exclusively in interstate or foreign commerce, or any combination thereof, may elect coverage under this title in the manner provided by RCW 51.12.110 for their employees.
Former RCW 51.12.095(1), Laws of 1983, ch. 170, § 2. RCW 51.12.110 permits withdrawal from coverage by eligible employers who so elect.[3]
Drotzmann, Inc., contends that Mr. Stelter's subjective understanding as to which carrier employed him when he made intrastate deliveries is not relevant to whether a carrier is engaged exclusively in interstate commerce for purposes of its exemption from industrial insurance requirements. Rather, it argues, the critical inquiry is the origin and destination of the carrier's trucks. Since there is no evidence that Drotzmann, Inc., engaged in intrastate activities, Drotzmann, Inc., urges this court to reverse the Court of Appeals and reinstate the superior court's grant of summary judgment.
Mr. Stelter urges us to affirm the Court of Appeals, which held that a material question remains as to whether Mr. Stelter consented to his employment with Drotzmann Intrastate Trucking. He argues that because he was not aware of Drotzmann Intrastate Trucking he could not have been its employee during his intrastate activities. Therefore, he argues, he must have been employed by Drotzmann, Inc., for both interstate and intrastate activities. Based on this, Stelter urges that Drotzmann, Inc., is not engaged exclusively in interstate commerce and, therefore, is not entitled to the exemption under former RCW 51.12.095(1). He argues that his belief that he was carrying out intrastate trucking activities for Drotzmann, Inc., creates a question of fact as to whether the company was engaged exclusively in interstate commerce.
Mr. Stelter is correct that a worker's reasonable belief is critical in determining whether the worker consented to employment with a specific employer. Fisher v. City of Seattle, 62 Wash.2d 800, 384 P.2d 852 (1963); Novenson v. Spokane Culvert & Fabricating Co., 91 Wash.2d 550, 588 P.2d 1174 (1979).[4] And, if there were a material question, the test set forth in Novenson and Fisher would be useful in deciding whether Mr. Stelter had an employment relationship with Drotzmann Intrastate Trucking. However, it is undisputed that Stelter was an employee of Drotzmann, Inc., at the time of his injury and that he was injured in the course of employment with that company. Accordingly, there is no need to conduct an employment relationship analysis in this case. See Ackley-Bell v. Seattle Sch. Dist. No. 1, 87 Wash.App. 158, 166, 940 P.2d 685 (1997) (no need to conduct Novenson two-prong inquiry where employer's identity at the time of the injury is undisputed).
The critical question here is whether Drotzmann, Inc., engaged exclusively in *252 interstate activities. The origin and destination of the goods transported determines whether a trucking company is involved in interstate or intrastate commerce. Interstate trucking is defined as "the hauling of goods that either originate out of state or have an out-of-state destination." WAC 296-17-537 (1102-02). "Intrastate trucking is the hauling of goods only within the boundaries of a state." WAC 296-17-537 (1102-03). Mr. Stelter does not claim that he made any trip on behalf of Drotzmann, Inc., that mixed interstate and intrastate activities. His sole claim is that he did not know that he was driving for Drotzmann Intrastate Trucking when he made intrastate trips.
It is undisputed that Drotzmann, Inc., leases its trucks and drivers to Drotzmann's Intrastate Trucking, which is authorized to operate intrastate. Mr. Stelter has pointed to no authority suggesting that by leasing drivers and trucks to a separate intrastate carrier Drotzmann, Inc., is engaging in intrastate commerce. And, although Mr. Stelter implies that Drotzmann, Inc., and Drotzmann Intrastate Trucking are the same company, he does not support this contention with legal authority. His only legal argument is that because he was unaware of Drotzmann Intrastate Trucking and did not consent to engage in intrastate activities on its behalf, he must have been engaged in intrastate hauling for Drotzmann, Inc., Whether Mr. Stelter understood the leasing arrangement between Drotzmann, Inc., and Drotzmann Intrastate Trucking is not relevant, however, because (1) his understanding does not determine whether Drotzmann, Inc., was engaged exclusively in interstate commerce and (2) he was injured while employed by Drotzmann, Inc., and performing interstate activities.[5]

CONCLUSION
An employee's subjective belief about the nature of his employer's business is not a factor in determining whether the employer is engaged exclusively in interstate commerce for purposes of former RCW 51.12.095(1). We hold that Drotzmann, Inc.'s motion for summary judgment was properly granted. The Court of Appeals is reversed.
ALEXANDER, C.J., SMITH, JOHNSON, IRELAND, BRIDGE and OWENS, JJ., concur.
CHAMBERS, J., dissenting.
I respectfully dissent. My learned colleagues have determined facts appropriate for a trial court. I agree with the majority that "[t]he critical question here is whether Drotzmann, Inc., engaged exclusively in interstate activities." Majority at 251. If Drotzmann, Inc., employed Robert Stelter to make any intrastate deliveries, Drotzmann, Inc., was not engaged exclusively in interstate commerce. Material questions of fact remain unanswered. Therefore, I would affirm the Court of Appeals and remand for further proceedings.
This court applies common law principles of agency relating to masters and servants to determine if an employer-employee relationship exists for workers compensation purposes. See, e.g., Novenson v. Spokane Culvert & Fabricating Co., 91 Wash.2d 550, 553, 588 P.2d 1174 (1979); Fisher v. City of Seattle, 62 Wash.2d 800, 804-06, 384 P.2d 852 (1963). Drotzmann, Inc., was Stelter's employer on intrastate deliveries if (1) it had the right to control Stelter's physical conduct in the performance of his duties, and (2) Stelter consented to this master-servant relationship. See RESTATEMENT (SECOND) OF AGENCY §§ 2, 15, 220 (1958); Novenson, 91 Wash.2d at 553, 588 P.2d 1174 (citing Marsland v. Bullitt Co., 71 Wash.2d 343, 428 P.2d 586 (1967)); Fisher, 62 Wash.2d at 804-06, 384 P.2d 852.
*253 Many factors are considered to determine if an alleged employer/master has the requisite right of control over an alleged employee's/servant's physical conduct while performing duties. RESTATEMENT, supra, § 220(1), (2)(a)-(j).[1] Stelter has offered sufficient evidence to overcome summary judgment that Drotzmann, Inc., not only had the right of control over his physical conduct while driving intrastate trips but exercised this control.
For example, a Drotzmann, Inc., supervisor directed Stelter as to which loads he would deliver and to the loads' destinations including intrastate loads. Certified Appeal Bd. R. Tr. (CABRT) (May 24, 1999) at 5; cf. RESTATEMENT, supra, § 220(2)(a). Drotzmann, Inc., maintained a logbook of mileage and delivery destinations for all of Stelter's trips including intrastate deliveries. CABRT (May 24, 1999) at 6; cf. RESTATEMENT, supra, § 220(2)(a). The trucks that Stelter drove on both intrastate and interstate trips said "Drotzmann, Inc." on them. CABRT (May 24, 1999) at 16; cf. RESTATEMENT, supra, § 220(2)(e). Drotzmann, Inc., calculated Stelter's pay based on the shortest distance between the pick-up and drop-off of each trip, including intrastate trips. CABRT (May 24, 1999) at 7; see also App. 1 of Resp't's Suppl. Br. (settlement details); cf. RESTATEMENT, supra, § 220(2)(g). Drotzmann, Inc., combined Stelter's pay for both interstate and intrastate trips on the same pay check. CABRT (May 24, 1999) at 9, 11; see also Apps. 1 & 2 of Resp't's Suppl. Br.; see RESTATEMENT, supra, § 220(2)(g). The payment checks listed Drotzmann, Inc., as Stelter's employer and were printed on Drotzmann, Inc., letterhead. CABRT (May 24, 1999) at 11, 43, 47; see also App. 2 of Resp't's Suppl. Br.; cf. RESTATEMENT, supra, § 220(2)(g).
The only evidence that Drotzmann, Inc., offered that it did not employ Stelter to make intrastate deliveries is a leasing agreement with Drotzmann Intrastate Trucking and the testimony of its comptroller. CABRT (May 28, 1999) at 20, 26, 32, 37, 39; Exs. 7 & 8. Drotzmann, Inc., claims, and without comment the majority implicitly finds, that by virtue of the leasing agreement Drotzmann Intrastate Trucking became Stelter's employer for intrastate deliveries. Pet. for Review at 3-5. But whether Stelter became the employee of Drotzmann Intrastate Trucking, or remained an employee of Drotzmann, Inc., while driving trucks for intrastate deliveries, is a question of fact to be determined by the trier of fact. See Novenson, 91 Wash.2d at 555, 588 P.2d 1174.
Although a general employer (Drotzmann, Inc.) may lend a servant (Stelter) to a special employer (Drotzmann Intrastate Trucking), the special employer can only become the servant's master if two conditions are met: (1) it has the exclusive right to control the servant's physical conduct in the performance of his duties, and (2) the servant consents to this master-servant relationship. Am. Sign & Indicator Corp. v. State, 93 Wash.2d 427, 434, 610 P.2d 353 (1980) (citing Davis v. Early Constr. Co., 63 Wash.2d 252, *254 258, 386 P.2d 958 (1963)); see RESTATEMENT, supra, §§ 2, 15, 220; Novenson, 91 Wash.2d at 553, 588 P.2d 1174 (citing Marsland, 71 Wash.2d 343, 428 P.2d 586); Fisher, 62 Wash.2d at 804-06, 384 P.2d 852.
Stelter offered evidence that Drotzmann, Inc., had the right to control his physical conduct when he drove trucks making intrastate deliveries. Drotzmann, Inc., has not offered evidence that Drotzmann Intrastate Trucking had the exclusive right to control Stelter's physical conduct when he drove trucks for intrastate deliveries. In addition, Stelter offered evidence that he did not consent to a master-servant relationship with Drotzmann, Inc. CABRT (May 24, 1999) at 15 (testimony that Stelter was unaware of Drotzmann Intrastate Trucking and could not have consented to a relationship with an unknown entity). While I note that Drotzmann, Inc., offered some evidence that it explains its business relationship with Drotzmann Intrastate Trucking to all new drivers, CABRT (May 28, 1999) at 16-17, 48-49, 54, it has not offered any evidence that Stelter consented to a master-servant relationship with Drotzmann Intrastate Trucking.
Application of general Washington law, not the exceptions carved out due to our respect for federal preemption, is consistent with both our statutory and case law. The legislature mandates that we liberally construe the Industrial Insurance Act (Act), Title 51 RCW, to achieve its remedial purpose of "reducing to a minimum the suffering and economic loss arising from injuries and/or death occurring in the course of employment." RCW 51.12.010. The legislature also intends for the Act to cover "all employments which are within the legislative jurisdiction of the state." RCW 51.12.010.
A small number of employments are excluded from the Act's reach by statute. RCW 51.12.020. The legislature chose to exclude additional employments from mandatory coverage under the Act to prevent the State from impermissibly infringing on interstate commerce where there has been federal preemption. See, e.g., MSM Hauling, Inc. v. Dep't of Labor & Indus., 112 Wash.2d 450, 455, 771 P.2d 1147 (1989) (holding RCW 51.12.090 exemption only limits the State's impermissible infringement on interstate commerce where there has been federal preemption). Unless and until there has been federal preemption, the Act applies to workers engaged in mixed intrastate and interstate commerce. MSM Hauling, 112 Wash.2d at 454, 771 P.2d 1147.
Drotzmann, Inc., is a sophisticated company which has used a paper scheme to structure itself and another business owned by other members of the owning family in part for the purpose of avoiding the payment of industrial insurance premiums. Clerk's Papers (CP) at 25. There is, of course, nothing inherently wrong with plans and organizations that reduce taxes. Cf. Comm'r v. Newman, 159 F.2d 848, 850-51 (2d Cir.1947) (Hand, J., dissenting) ("Over and over again courts have said that there is nothing sinister in so arranging one's affairs as to keep taxes as low as possible."). Although Drotzmann, Inc., met the requirements for exemption at a time in the late 1980's and early 1990's, the company has not proven that it met the requirements for exemption at the time of Stelter's injury. Allowing companies to enjoy absolute exemptions because at one time they met the requirements for an exemption is unsupported by the clear language and intent of former RCW 51.12.095(1) (1983), amended by Laws of 1989, ch. 368, § 1.
The underlying reason for the exemption in former RCW 51.12.095(1) was federal preemption. The requirement that the company engage exclusively in interstate or foreign commerce to be exempt under former RCW 51.12.095(1) limits the Act only to the extent that federal preemption was a concern. This State, as a sovereign, has the power to regulate businesses operating within its boundaries. Southcenter Joint Venture v. Nat'l Democratic Policy Comm., 113 Wash.2d 413, 443, 780 P.2d 1282 (1989) (Utter, J., concurring). Once the company ceases to engage exclusively in interstate or foreign commerce, the legislative reasoning behind the exemption no longer exists, and the company no longer meets the requirements for exemption.
In light of the reasoning behind the exemption under former RCW 51.12.095(1) and a plain reading of the statute and its implementing regulation, to determine if Drotzmann, Inc., was an employer exempted from *255 mandatory coverage at the time of Stelter's injury it must be determined if the company was engaged exclusively in interstate commerce. The law is so clear that both the Department and Drotzmann, Inc., concede that if the company engaged in a single intrastate delivery it would not meet the exclusively interstate requirement.[2]See CP at 25-26. If Drotzmann, Inc., made any intrastate deliveries, the exception for companies engaged only in interstate commerce does not apply, and it is immaterial that Stelter was injured while making an interstate delivery as suggested by the majority. Majority at 252. Therefore, whether Drotzmann, Inc., employed Stelter to drive trucks making intrastate runs is a material question of fact for the trial court.
Summary judgment is only appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c). All facts and reasonable inferences from the facts must be taken in the light most favorable to Stelter, the nonmoving party. See Our Lady of Lourdes Hosp. v. Franklin County, 120 Wash.2d 439, 452, 842 P.2d 956 (1993). Drotzmann, Inc., has not proven that it was engaged exclusively in interstate commerce and therefore is not entitled to judgment as a matter of law. Stelter is entitled to a jury trial to resolve the factual dispute regarding who employed him to drive trucks making intrastate deliveries. See RCW 51.52.115; Romo v. Dep't of Labor & Indus., 92 Wash.App. 348, 353, 962 P.2d 844 (1998). Because a genuine issue of material fact remains, I would affirm the Court of Appeals and remand for further proceedings. I therefore respectfully dissent.
SANDERS, J., concurs.
NOTES
[1] In 1991 the Department audited Drotzmann, Inc., and affirmed that it met the conditions for the common carrier exemption from mandatory coverage.
[2] This conclusion was denominated a finding of fact.
[3] The Department promulgated a three-part test to determine when employers are exempted from mandatory coverage under RCW 51.12.095(1). WAC 296-17-35203(3)(c) provides in part:

(c) Exclusions. Trucking industry employers meeting all of the following conditions are exempted from mandatory coverage.
(i) Must be engaged exclusively in interstate or foreign commerce.
(ii) Must have elected to cover their Washington workers on a voluntary basis under the Washington state fund and must have elected such coverage in writing on forms provided by the department.
(iii) After having elected coverage, withdrew such coverage in writing to the department on or before January 2, 1987.
[4] The test set forth in those cases is (1) does the employer have the right to control the person's physical conduct in the performance of his duties? and (2) has the person consented to the relationship? See also Jackson v. Harvey, 72 Wash.App. 507, 514-15, 864 P.2d 975 (1994); Smick v. Burnup & Sims, 35 Wash.App. 276, 277-78, 666 P.2d 926 (1983).
[5] In supplemental briefing the Department raises a new issue regarding whether Drotzmann, Inc., was required to and did provide notice to Mr. Stelter that the company was excluded from mandatory coverage. RCW 51.52.104 provides that a petition for review of an industrial insurance appeals judge's ruling "shall set forth in detail the grounds" for review and waives "all objections or irregularities not specifically set forth therein." The issue of notice was not raised or briefed to the Board or in judicial proceedings below. Additionally, assuming that Drotzmann, Inc., has an ongoing statutory obligation to notify its employees of its exemption from coverage, Mr. Stelter offered no evidence that he was not informed. We decline to reach the issue.
[1] Definition of servant:

(1) A servant is a person employed to perform services in the affairs of another and who with respect to the physical conduct in the performance of the services is subject to the other's control or right to control.
(2) In determining whether one acting for another is a servant or an independent contractor, the following matters of fact, among others, are considered:
(a) the extent of control which, by the agreement, the master may exercise over the details of the work;
(b) whether or not the one employed is engaged in a distinct occupation or business;
(c) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision;
(d) the skill required in the particular occupation;
(e) whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work;
(f) the length of time for which the person is employed;
(g) the method of payment, whether by the time or by the job;
(h) whether or not the work is a part of the regular business of the employer;
(i) whether or not the parties believe they are creating the relation of master and servant; and
(j) whether the principal is or is not in business.
RESTATEMENT, supra, § 220(1), (2)(a)-(j).
[2] Evidence that Drotzmann, Inc., mixed intrastate and interstate deliveries would be sufficient to prove that it was not engaged exclusively in interstate commerce. See majority at 251. However, the absence of such evidence is not dispositive because Stelter has offered evidence that Drotzmann, Inc., engaged in intrastate activity by employing him to drive trucks making intrastate deliveries.